DOWNING (SMITH v.). See Case No. 13,036.

---

## Case No. 4,046.

### DOWNING v. TRADERS' BANK.

[2 Dill. 136; [2] 11 N. B. R. 371.]

Circuit Court, E. D. Missouri. 1873.

BANKRUPTCY—SECTION 19 CONSTRUED—PAYMENTS BY SURETY AFTER BANKRUPTCY OF PRINCIPAL DEBTOR.

1. The bona fide holder for value of an accommodation bill is entitled on the bankruptcy of parties thereto, to prove as to all parties

---

[1] [Reprinted from 3 N. B. R. 741 (Quarto, 181), by permission.]

[2] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

---

against whom the holder could have supported an action on the bill.

2. The receipt by a holder of a bill drawn by the bankrupt, but accepted for the accommodation of the drawer, of partial payment from the accommodation acceptor after the bankruptcy of the drawer, does not disentitle such holder from proving against the estate of the drawer in bankruptcy for the full amount due on the bill at the time of the adjudication of bankruptcy.

[Explained in Re Hollister, 3 Fed. 454. Cited in Re Broich, Case No. 1,921; Re Baxter, Id. 1,121; Re Pulsifer, 14 Fed. 249.]

3. Section 19 of the bankrupt act [of 1867 (14 Stat. 525)], in respect to partial payments made by a surety after the bankruptcy of the principal debtor, considered.

[Cited in Re Hollister, 3 Fed. 454.]

4. A mere covenant by a creditor not to sue an accommodation acceptor does not prevent him from proving against the drawer's estate in bankruptcy.

This was a contest in the district court between Downing's assignee in bankruptcy and the Traders' Bank of St. Louis, and the cause is brought here by the bank to obtain a review of the decision of the district court ordering the bank to credit the sum of $4,000 on its claim against the estate. Downing was adjudicated a bankrupt on the 9th day of December, 1869, upon a petition filed against him on the first day of that month. On the 12th day of February, 1870, the Traders' Bank filed and made proof of a claim against the estate of Downing for $18,500, composed of three protested drafts, each drawn by Downing; one for $4,500, protested June 15, 1869; one for $6,000, protested June 26, 1869; and one for $8,000 (being the one to which the present controversy relates), protested September 7, 1869. Accompanying the proofs of its claim, the bank filed a list of collaterals held by it. In January, 1872, the assignee objected to the proof of claim by the bank, on the ground that it should credit the sum of $4,000, alleged to have been paid by Saunders Bros. & Co. in the manner hereafter appearing.

The objections of the assignee were, by the parties, submitted to the district court upon the following agreed statement of facts:

"First. It is agreed by said parties that bankrupt on June 4, 1869, at St. Louis, Missouri, drew his draft on and directed to Saunders Bros. & Co., Boston, Mass., and thereby requested them, three months after date thereof, to pay to the order of bankrupt $8,000, value received, and to charge to his account.

"Second. This draft was accepted by Saunders Bros. & Co. for the accommodation of the drawer and payee, and without any consideration from said Downing to said Saunders Bros. & Co., it being a mere loan of their name, and that bankrupt discounted and sold this paper to said Traders' Bank for value.

"Third. That said Saunders Bros. & Co., after said draft had been duly protested, and all parties properly made liable thereon, and

after the failure of said Downing, gave certain notes to said Traders' Bank for fifty per cent. of said acceptance, and then and there received from said bank the following paper, to wit: 'To all Persons to Whom These Presents shall Come: The Traders' Bank, a corporation duly established by law in the state of Missouri, send greeting: Whereas, Edward W. Saunders, in the county of Essex, and commonwealth of Massachusetts, heretofore doing business under the style of Saunders Brothers & Company, is indebted to said bank as acceptor upon a draft, dated St. Louis, Missouri, June 4, 1869, for $8,000, drawn by William Downing, payable in three months after date, to said Downing's order, and indorsed by said Downing, and said Saunders is unable to pay his obligation in full, and some time since offered said bank to pay it one-half the amount of said draft in two equal instalments by his notes, indorsed by John Cummings, payable in four and six months from the maturity of said draft, with interest at the rate of six per cent. per annum, from maturity: Now, therefore, in consideration thereof, and of the receipt by said Traders' Bank of said notes, the said Traders' Bank doth hereby covenant and agree with said Saunders, his heirs, executors, and administrators, that it will not sue him or them upon said draft, or upon any claim arising out of the same, but this covenant is without prejudice to the rights of said bank against the other parties to said draft or any person whatsoever. In witness whereof the Traders' Bank has hereto affixed its seal and caused these presents to be signed by William Taussig, its president, thereunto legally authorized, this eighth day of November, Anno Domini, eighteen hundred and sixty-nine. William Taussig.' That said bank made this arrangement by and with full knowledge of all the parties, as to the relation that Saunders Bros. & Co. bore to said paper, and that the bank still holds the original draft. That Saunders Bros. & Co. made this arrangement with the bank without the knowledge, request, or consent, of Downing or his assignee.

"Fourth. The bank now presents the draft for allowance against the estate of Downing, the bankrupt, whilst Saunders Bros. & Co. seek to prove against said estate the $4,000 paid by them on the agreement of the Traders' Bank above set out. That the bank is willing to surrender all their rights to said draft to either the assignee or Saunders Bros. & Co. on the payment of the balance of the $8,000 to them, but not otherwise."

The record recites that "the court held on the facts submitted that the Traders' Bank is entitled to recover on the draft for $8,000 named in the said agreement the amount originally due thereon, with interest and damages, less the amount paid thereon by Saunders Bros. & Co.," and ordered a reference to Lucien Eaton, Esq., the register, to "ascertain the precise amount due in accord-

ance with this ruling." The register reported the amount due on said draft for $8,000, less the credit, required by the order of the court, to be $5,570.60, and that the entire unsecured balance due the bank from Downing's estate, including that sum, was $7,745.48, and judgment was entered accordingly.

The bank appeals, and the only ruling complained of is that by which it was ordered to credit on the draft for $8,000 the $4,000 received of the accommodation acceptor under the circumstances above set forth.

Slayback & Haussler, for the Traders' Bank.
Hitchcock, Lubke & Player, for assignee.

———

DILLON, Circuit Judge. This is a controversy between the assignee of Downing's estate and the Traders' Bank in respect to the bill of exchange for $8,000, of which Saunders Bros. & Co. were the accommodation acceptors for the bankrupt. The assignee claims for the estate the benefit of an alleged payment of $4,000 under the agreement of November 8, 1869, set out in the statement of the case. The draft for $8,000 matured, and was protested for non-payment, September 7, 1869. The agreement of November 8, 1869, between the Traders' Bank and Saunders recites that the bank has received of Saunders two notes of his for $2,000 each, indorsed by Cummings, due respectively in four and six months from maturity of the draft, and in consideration thereof the bank covenants with Saunders not to sue him on the draft; but it is provided that this covenant shall be without prejudice to the rights of the bank against the other parties to the draft or any other person. No indorsement of payment was made on the $8,000 draft, which was retained by the bank, and very shortly after the agreement of November 8th was made, and before the notes for the $4,000 which were received from Saunders, fell due, Downing was adjudicated a bankrupt.

It is not expressly admitted in the agreed statement that the notes for the $4,000 were ever paid; but this is perhaps fairly to be implied. The presumption is, that if they were paid, it was not before maturity, and consequently the payments were made after Downing was adjudicated a bankrupt. It is plain that upon the agreed statement there is no ground to hold that the bank received the new notes of Saunders indorsed by Cummings, in absolute extinguishment or satisfaction of one-half of the amount of the draft. No indorsement to that effect was made upon the draft, nor is there any acknowledgment of part payment contained in the agreement executed at the same time. On the contrary, the draft for the full amount was left in the hands of the bank, which agreed with Saunders not to sue him upon the said draft, but it reserved its rights without prejudice against all other parties. Story says that "by the law of England, and of most of the states of America, the receipt of the promissory note

of the debtor for a debt is, in the absence of all other proof, treated as a conditional payment only of the debt; that is to say, if or when the note is paid." Story, Prom. Notes, § 438. "Where the holder receives a promissory note. or bill in payment of a debt, it is not an absolute, but a conditional payment only, unless otherwise agreed by the parties, and it only suspends the right to recover until the credit has expired." Id. § 389. And he lays down the same rule where the creditor receives from the debtor the note of a third person; presumably, it is a conditional satisfaction, or extinguishment only. Id. § 404. We cannot, therefore, upon the facts appearing in the agreed statement, hold that the bank took the new notes in extinguishment of $4,000 of the amount due it on the draft, or that the new notes were received by the bank in absolute payment to that extent. The presumption of law is otherwise, and the presumption is fortified by the non-indorsement of payment, and by the language of the agreement, which is a covenant not to sue, and not an acknowledgment of satisfaction or payment.

It will be conceded that from the agreed statement it can be implied that these new notes were subsequently paid; and, nothing appearing to the contrary, the presumption is that they were paid by Saunders at maturity, which, as before stated, was after the bankruptcy of Downing. Conceding also, for the time, that when the bank actually received payment of the new notes for $4,000 it operated to extinguish, or satisfy pro tanto, the amount due on the original draft, we now proceed to inquire to what extent the bank was entitled to make proof in bankruptcy with respect to this draft? Saunders Bros. & Co. having accepted this draft for the accommodation of Downing, the drawer, the latter, as between them, was the principal debtor, they being his sureties, or incurring a liability in that nature. Chit. Bills, 703, 708, 718. Downing was the party principally and ultimately liable for the $8,000; and it is not controverted that in respect to this debt the sum of $8,000 can be proved against his estate. It is admitted on all hands that the bank can prove to the extent of $4,000; and as to the other $4,000, the only question is, whether it shall be established as a claim in favor of the bank or in favor of Saunders. In effect, the substantial controversy seems to be one between the bank and Saunders; and so far as this record shows, it is a matter of indifference to the estate of Downing whether the allowance is to the one claimant or the other; so that the assignee, in resisting the claim of the bank, apparently occupies the position of waging gratuitously the battle of Saunders.

As the latter is not before the court, his rights as against the bank cannot be investigated or determined. We have only to do with the rights of the assignee and of the bank. And thus the question is narrowed down to this: Had the bank, as against the estate of Downing, the right to prove its claim to the full amount of the draft? Or, in other words, has the assignee the right to insist that the bank must credit the $4,000 and prove for the balance only? This $4,000, it will be borne in mind, was received by the bank, not from the estate of Downing, the principal debtor, but from his surety, and was received by it after the bankruptcy, though in pursuance of an agreement made just before that event, to. which, however, Downing was not a party. The question here presented depends upon the construction of section 19 of the bankrupt act, to the terms of which I will refer in a moment. The bank being a bona fide holder of the draft for value, would be entitled on the supervention of bankruptcy to prove against any and all parties against whom it could have supported an action on the bill; and unless it had released or parted with its rights, it could have sued concurrently both the acceptors and the drawer. Chit. Bills, 721; Id. 703, 708. It could recover against both, though of course it could have but one satisfaction. Its agreement of November 8th, before-mentioned, would have prevented it from sustaining any action after that time against the accommodation acceptors; or, if they had gone into bankruptcy, from proving against their estate. But this agreement on its face declared that it did not prejudice the rights of the bank against Downing. Before any payment, so far as this record shows, was received by the bank, Downing was adjudicated a bankrupt; and his assignee claims that the bank must now credit the amount which it received after the bankruptcy, not from Downing, nor from anything he had pledged to secure the debt, but from his accommodation acceptor.

This question is settled by the bankrupt act: "All debts due and payable from the bankrupt at the time of the adjudication of the bankruptcy, and all debts then existing but not payable until a future day, a rebate of interest being made, may be proved against the estate of the bankrupt." This $8,000 draft was due and payable to the bank by Downing, the principal, at the time he was adjudicated a bankrupt. At that time the bank had received nothing from any one, and has received nothing to this day from Downing or his estate or property. If Downing had not been put into bankruptcy, and had been sued on the draft at law, a plea that the bank had entered into a covenant not to sue his surety would have presented no defence. This was simply a covenant not to sue the accommodation acceptors, and did not, under the authorities, extinguish or satisfy the debt, or any part of it, as against the drawer, who had, in no event, any recourse over against the acceptors. 2 Pars. Notes & B. p. 238; Story, Prom. Notes, §§ 409, 421, 426; Jones v. Broadhurst, 9 Man., G. & S. 173. The statute, by the lan-

.guage above quoted, requires debts to be due and payable at the time of the adjudication of bankruptcy, or to be then existing, though not payable until a future day; and at the time of the adjudication of bankruptcy the whole amount of the draft was due to the bank. If it had afterwards received payment by or through Downing or his property, it might have been compelled to credit it. Section 22.

The next portion of section 19 which refers to the question before us, reads as follows: "Any person liable as bail, surety, guarantor, or otherwise, for the bankrupt, who shall have paid the debt, or any part thereof in discharge of the whole, shall be entitled to prove such debt, or to stand in the place of the creditor, if he shall have proved the same, although such payments shall have been made after the proceedings in bankruptcy were commenced." The act proceeds: "And any person so liable for the bankrupt, who has not paid the whole of said debt, but is still liable for the same or any part thereof, may, if the creditor shall fail or omit to prove such debt, prove the same in the name of the creditor or otherwise, as may be provided by the rules," &c. These provisions apply to the question presented in this case.

Now conceding, for the purposes of this appeal, but not deciding, that when the bank received the $4,000 of Saunders, it operated as a payment or satisfaction pro tanto of the draft, yet, as the whole debt was not paid, nor part in discharge of the whole, the bank could still, under the language of the act, prove the whole amount as against the drawer, and at the most would be liable only to be treated as proving or having proved, for the benefit in part of the party from whom it received, as the surety of the bankrupt, such partial payment. If the bank should refuse or omit to prove for the whole amount, then the party paying could make the proof, in the name of the creditor, or otherwise. This view of section 19 will be found to be much strengthened by the course of decision under the English bankrupt acts, both prior to and since the act of 6 Geo. IV. c. 16, § 52, from which this portion of the 19th section of our act is substantially taken. It would too much protract this opinion to go at length into a review of the English legislation and decisions, and I will content myself by referring to Mr. Chitty's view of them in his work on Bills. Chit. Bills, 703, 727.

On the agreed statement of facts, the bank, as against the objection of the assignee, is entitled to make proof for the whole amount of the draft, and if Saunders claims, as to the $4,000 which he paid after the bankruptcy, that he is entitled to stand in the place of the bank, he can make application to the bankrupt court to that effect. This will bring the two parties interested face to face, and the court will determine their rights upon the case they make. It would be premature to pass upon them now. If Saunders should establish his right to prove against the estate for the $4,000 paid to the bank, or to hold the estate liable therefor, it will follow that the court will make an order that the proof made by the bank shall to that extent stand for his benefit. If he shall fail to establish this right, it will follow that the bank is entitled to receive dividends on the basis that the whole amount of the draft is due to it. This disposition of the matter seems preferable to the one made by the district court, since, as we have seen, it is clear that the estate is liable in respect to the whole amount of the draft, either alone to the bank or to it and Saunders. The order appealed from holds that the bank is not entitled to prove as respects the $4,000 paid by Saunders, which is equivalent to holding that Saunders is entitled to make proof for this sum, a question which it is better to determine on an application by Saunders adverse to the bank, and where both parties can be fully heard. The order of the district court will be modified accordingly, and the cause will be remanded, with directions to overrule the objections of the assignee to the proof of claim of the bank, but with leave to Saunders to apply to the court for an order that the proof made by the bank shall stand pro tanto for his benefit, of which application the bank shall be entitled to notice. Modified and remanded.

NOTE. In support of the foregoing view, see decision of Hoffman, J., in Re Ellerhorst [Case No. 4,381], and cases there cited; Ex parte De Tastet, 1 Rose, 10; Reid v. Furnival, 1 Cromp. & M. 538. When payment or satisfaction by one party to a bill or note, will enure to the benefit of other parties: See Jones v. Broadhurst, 9 Man., G. & S. 173, where the English cases are collected and reviewed in the learned judgment of Creswell, J.