BOARD OF COM'RS OF SHAWNEE COUNTY, KAN., v. HURLEY et al.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1909.)

No. 2,864.

1. BANKRUPTCY (§ 308*)—CLAIMS—DIVIDENDS—PAYMENTS AFTER BANKRUPTCY BY THIRD PARTIES DO NOT REDUCE.

The obligee in a bond, or the holder of a claim upon which several parties are personally liable, may prove his claim against each of the estates of those who become bankrupt, and may at the same time pursue the others at law, and he may recover notwithstanding payments after the bankruptcy by other obligors or by their estates dividends from each estate in bankruptcy upon the full amount of his claim at the time the petition in bankruptcy was filed therein, until from all sources he has received full payment of his claim, but no longer.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 308.*]

2. BANKRUPTCY (§ 359*)—VESTING EQUITABLE ESTATE IN CREDITORS IN PROPORTION TO CLAIMS.

The filing of a petition in bankruptcy vests in each creditor of the bankrupt an equitable estate in such a proportion of his property as the creditor's claim bears to the entire amount of the provable claims.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 359.*]

3. APPEAL AND ERROR (§ 878*)—PARTIES ENTITLED TO ALLEGE ERROR—CROSS-ERRORS NOT COGNIZABLE IN FEDERAL APPELLATE COURTS.

An appellee who does not take an appeal, and a defendant in error who does not sue out a writ of error, cannot confer jurisdiction upon an appellate court to consider or review decisions adverse to him upon questions suggested by an assignment, or by an argument of cross-errors, nor can he be heard upon such questions. He may be heard only in support of the order, decree, or judgment below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. § 878.*]

(Syllabus by the Court.)

Appeal from the District Court of the United States for the District of Kansas.

Edwin A. Austin (John J. Schenck, on the brief), for appellant. John S. Dean, for appellees.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. On November 21, 1902, the First National Bank of Topeka, Kan., as principal, and Charles J. Devlin and others, as sureties, gave a bond to the county of Shawnee in the state of Kansas conditioned, among other things, that the bank should repay the money deposited with it by the county on demand. On July 3, 1905, the bank was insolvent, and a receiver was appointed by the Comptroller of the Currency who took possession of its property. On July 6, 1905, a petition in bankruptcy against Charles J. Devlin was filed upon which he was subsequently adjudged a bankrupt. At the time this petition was filed the bank was indebted to the county on account of deposits made with it in the sum of $32,731.05. On July 7, 1905, the county demanded payment of this amount from the bank, and it failed to pay any part of it. The county then proved its claim for this amount against the estate of Devlin, and on October 19, 1905, it was tentatively allowed, subject to a reconsideration upon the filing of other objections. Between the date of the filing of the petition and March 24, 1908, the county received in dividends upon its claim out of the property of the insolvent bank $26,839.46, and the referee thereupon allowed its claim for the remainder, $5,891.59, only, and his action was confirmed by the District Court. The county has appealed and has assigned as error that the court refused to allow its claim for the $32,731.05 owing at the time the petition in bankruptcy was filed and to order the payment of dividends upon that amount.

In their brief counsel for the appellees argue that no part of the claim of the county was provable because it was contingent and unliquidated, contingent because Devlin was liable to pay in case of the default of the bank only, and there had been no default on July 6, 1905, since no demand of payment was made of the bank until the next day, and unliquidated because the condition of the bond was that the bank, in addition to paying back the money deposited when demanded, should file with the county clerk each month a statement of the amount on hand during the previous month and of the amount of interest accrued

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thereon and should discharge all duties imposed upon it by law, and the amount of the damages for its failure to comply with these terms was undetermined. But the referee and the District Court decided these questions against the trustees, this court has no jurisdiction of them and they are here dismissed because the trustees took no appeal. An appellee who does not take an appeal, and a defendant in error who does not sue out a writ of error, cannot confer jurisdiction upon an appellate court to consider or review rulings adverse to him upon questions suggested by an assignment or an argument of cross-errors. He cannot be heard upon such questions in the appellate court. He may be heard only in support of the order, decree, or judgment below. The Maria Martin, 12 Wall. 31, 40, 20 L. Ed. 251; Guarantee Bank of North America v. Phenix Ins. Co., 124 Fed. 170, 172, 173, 59 C. C. A. 376, 378, 379; Building & Loan Ass'n v. Logan, 66 Fed. 827, 828, 14 C. C. A. 133, 134; Clark v. Killian, 103 U. S. 766, 769; United States v. Blackfeather, 155 U. S. 180, 186, 15 Sup. Ct. 64, 39 L. Ed. 114; The Stephen Morgan, 94 U. S. 599, 24 L. Ed. 266; Cleary v. Ellis Foundry Company, 132 U. S. 612, 614, 10 Sup. Ct. 223, 33 L. Ed. 473; Bolles v. Outing Company, 175 U. S. 262, 268, 20 Sup. Ct. 94, 44 L. Ed. 156; Pauly Jail Building & Mfg. Co. v. Hemphill County, 62 Fed. 698, 703, 10 C. C. A. 595, 600.

A single question remains: Is the claim of a creditor against the estate of a surety in bankruptcy upon which the principal has made partial payments after the date of the filing of the petition in bankruptcy entitled to allowance at and to dividends upon the amount owing upon it when the petition was filed, or upon the amount remaining unpaid upon it when the final allowance of it is made, or when the respective dividends are paid? In the discussion of this question preferences, securities consisting of pledged or mortgaged property, such as are required to be surrendered or applied upon claims by the bankruptcy law, are laid out of consideration, and what is said has no reference to rights under them, because no such rights are in issue here. Laying out of view then such preferences and securities, the status of claims at the time of the filing of the petition in bankruptcy, and not at any subsequent time, fixes the rights of their owners to share in the distribution of the estate of the bankrupt. Bankr. Act, July, 1898, c. 541, § 63a(1), 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447); Swarts v. Siegel, 117 Fed. 13, 15, 54 C. C. A. 399, 401; In re Bingham (D. C.) 94 Fed. 796. On that date the property of the bankrupt passes from his control to the court or to its receiver, and thence to the trustee in trust for the creditors of the bankrupt in proportion to the amounts of their claims at that time. On that date there vests in each creditor as a cestui que trust an equitable estate in such a part of the property of the bankrupt as the amount of his provable claim at that time bears to the entire amount of the provable claims against the estate. On that date the bankruptcy law deprives the creditor of all his common-law remedies to collect his debt out of the property of his debtor and to collect subsequent interest on his claim against that property, and gives him in lieu thereof this equitable estate in the property of the bankrupt. Thus the filing of a petition upon which a subsequent adjudication of

bankruptcy is rendered places all the property of the bankrupt "which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him" in custodia legis. Section 70a(5), 30 Stat. 566 (U. S. Comp. St. 1901, p. 3451). From that hour the bankrupt is divested of the power to appropriate it to the payment of his debts or to use and dispose of it at will, and that authority is vested in the District Court. Every suit against him upon a provable claim is stayed from the date of the filing of the petition. Section 11a, 30 Stat. 549 (U. S. Comp. St. 1901, p. 3426). Every person is forbidden to receive from the bankrupt any material amount of property after that date with intent to defeat the act. Section 29b, 30 Stat. 554 (U. S. Comp. St. 1901, p. 3433). Every intentional preference after that date is voidable. Section 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445). Upon the filing of the petition the court may take immediate possession of the property if the bankrupt is neglecting it so that it is deteriorating in value. Section 69a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3450). And upon the appointment of the trustee all the property of the bankrupt which, prior to the filing of the petition, he could have transferred, or which could have been siezed or sold under judicial process against him, passes to this officer of the court. Section 70a(5). Indeed, the condition at the time of the filing of the petition measures the extent of the estate and the rights of all creditors of the bankrupt and all parties interested in the property throughout all the provisions of the law. Sections 1(10), 3b, 9b, 29b(4), 63a(1), 30 Stat. 544, 546, 549, 554, 562 (U. S. Comp. St. 1901, pp. 3419, 3422, 3426, 3447).

Counsel for the trustees argue, however, that the claimant should be limited to a dividend on the unpaid balance of its claim: (1) Because Devlin was liable on the bond for the damages which the county sustained from the failure of the bank to repay the deposit only, and these damages were but $5,891.59, since the estate of the bankrupt paid $26,839.41 after the bankruptcy of Devlin; (2) because at the time of the final allowance of the appellant's claim a judgment could not have been recovered against Devlin, if living, for more than this unpaid balance and interest; and (3) because the estate of the bank and the estate of Devlin were both under administration in the court below, and that court had the right, and it was its duty, to require the estate of the principal debtor to exonerate the estate of the surety and to protect the latter against the obligation of the bond.

1. To the first reason presented there are two answers: First, there vested in the county when the petition in bankruptcy was filed an equitable estate in such a portion of the property of Devlin as $32,731.05, the amount then owing by Devlin on its claim, bore to the amount of all the provable claims against his estate, and the county is entitled to the same proportion of the proceeds and dividends from that property until its claim is fully paid, because its equitable estate in this property is not diminished or changed by payments which it subsequently obtains upon its claim from other sources. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 147, 19 Sup. Ct. 360, 43 L. Ed. 640; Chemical National Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R.

A. 231; Miller's Appeal, 35 Pa. 481. Second, the obligation of Devlin was to pay all the damages which the county sustained by the failure of the bank to repay the deposit, and when the petition in bankruptcy was filed and the rights of the creditors of Devlin were fixed those damages were $32,731.50, for the bank had then failed to pay any of the deposit. Neither Devlin nor any of his other creditors had any legal or equitable right to take from the county any moneys subsequently paid to it by the bank upon the county's claim, and they had no better right to take out of or to derive any benefit from his property on account of such subsequent payments, for the obligation and the trust in favor of the county's claim rested on Devlin and on his property and not upon the county. The amount of the damages when the petition was filed was $32,731.50. Eighty-two per cent. of this amount was subsequently paid by the estate of the bank. Suppose that the estate of Devlin will pay a dividend of 10 per cent. on the provable claims of the creditors. If that dividend is paid on the claim of the county as it stood when the petition was filed, the county will receive $3,273.10. If it is paid on the unpaid balance of that claim, the county will receive $589.16. Who will receive the difference, $2,463.94? The other creditors of Devlin. They will take out of the estate of the surety, by whose right alone they are entitled to any of his property, $2,463.94, which the county would otherwise receive solely because the county, after the filing of the petition in bankruptcy, collected $26,839.41 out of the estate of the principal debtor. No principle of law or equity occurs to us that will sustain such a result. Devlin, the surety, and his other creditors, were alike estopped by the obligation of the bond he signed, and by his agreement therein to see that the bank paid the claim of the county from deriving any benefit from the payments made by the principal debtor until the entire claim which Devlin had guaranteed was paid. Swarts v. Fourth National Bank, 117 Fed. 1, 12, 54 C. C. A. 387, 398.

2. It is true that, if Devlin had been living when the claim of the county was finally allowed, no judgment could have been recovered against him at that time for more than the balance of the claim remaining unpaid; but, after the filing of the petition in bankruptcy, the claim against Devlin and the claim against his estate in bankruptcy were not identical. The former was a chose in action; the latter was an equitable estate. The one was a claim in personam; the other a claim in rem. The former was measured by the terms of the contract and, subject to Devlin's probable discharge in bankruptcy, drew interest according to the terms of the contract, and if no discharge should be granted was suable. The latter was an equitable right to such a share of the property of the bankrupt as its amount at the filing of the petition bore to the amount of all the provable claims against that property. It drew no interest after the petition was filed because it was an equitable estate and not a personal claim, and, while subsequent payments by the principal debtor reduced the claim against Devlin, they did not affect the equitable estate in his property which the county held until the full payment of that claim had been received by it.

3. The answer to the third reason presented by counsel for the trus-

tees is that while a court of equity administering the estates of principal and surety may, within the limits fixed by the law, require payment out of the estate of the former in preference to payment out of the estate of the latter, upon the principle that where a creditor has a claim to two funds he may be required to exhaust one of them in aid of other creditors who can only resort to the other, the exercise of this power is prohibited in this case by the equitable principle that it may never be used where it trenches on the rights or operates to the prejudice of the party entitled to both funds (Merrill v. National Bank of Jacksonville, 173 U. S. 131, 138, 19 Sup. Ct. 360, 43 L. Ed. 640; Story's Equity Jurisprudence [13th Ed.] § 633; In re Bates, 118 Ill. 524, 9 N. E. 257, 260, 59 Am. Rep. 383), the court may not take from the county its rightful dividends for the benefit of the other creditors of either the principal or surety on its bond, and by the rule that the creditors of the bank other than the county are entitled under the bankruptcy law to the same dividends on their claims that the bank is entitled to receive upon its bond. The arguments advanced by counsel for the trustees in support of the rule that dividends upon claims against bankrupts should be reduced in proportion to the payments made thereon by third parties after the bankruptcy are not persuasive. That rule would require a reconsideration and reallowance of the claims of creditors upon which any third party is liable every time he makes a payment, or at least before each dividend after any such payment has been made. It would result in much confusion and delay and it should not be adopted unless established rules of law and of practice require such action. None have been called to our attention which compel or even persuade to such a course, and our conclusion is:

The obligee in a bond, or the holder of a claim, upon which several parties are personally liable, may prove his claim against the estates of those who become bankrupt and may at the same time pursue the others at law, and, notwithstanding partial payments after the bankruptcy by other obligors or their estates, he may recover dividends from each estate in bankruptcy upon the full amount of his claim at the time the petition in bankruptcy was filed therein until from all sources he has received full payment of his claim, but no longer. In re Babcock (Mr. Justice Story) 2 Fed. Cas. 289, 291 (No. 696); Ex parte Farnsworth, 8 Fed. Cas. 1055, 1056, (No. 4,672); In re Hicks, 12 Fed. Cas. 113, 114 (No. 6,456); In re Howard, 12 Fed. Cas. 625, 627 (No. 6,750); Downing's Assignee v. Traders' Bank, 2 Dill. 136, 144, 7 Fed. Cas. 1008, 1011 (No. 4,046); In re Souther, 22 Fed. Cas. 815 (No. 13,184).

The order of the court below is reversed, and the case is remanded to the District Court, with directions to allow the county's claim at $32,731.05 and to pay dividends on that amount until from all sources the claim is paid in full, but no longer.