### In re KESSLER & CO.

### Ex parte LLOYDS BANK.

(District Court, S. D. New York. July 8, 1909.)

BANKRUPTCY (§ 324*)—AMOUNT OF CLAIMS—SECURED CLAIMS—INTEREST.
    Under Bankr. Act July 1, 1898, c. 541, § 57h, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), a creditor of a bankrupt, holding security which is liquidated after adjudication by being converted into money "according to the terms of the agreement pursuant to which such securities were delivered" to him, is entitled to compute interest on his debt up to the time of such liquidation, and may marshal the proceeds of the security first upon the interest, and receive dividends on any unpaid balance of the principal. [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 324.*]

In Bankruptcy. On certificate from referee.
See, also, 165 Fed. 508.

In this case and in three others the referee certified to the District Court the following question: "Is a creditor holding security which is liquidated after the filing of the petition entitled to interest upon his claim after the filing of the petition in bankruptcy, where the proceeds of the sales of the security are inadequate to pay the face of the claim?" Two other questions were likewise certified to the court, upon which the trustee was successful, and which the claimant before the court now waives. The referee has allowed the secured creditor to marshal the proceeds of the security first against interest until the date of the liquidation of the security, and has then allowed proof for the balance of the claim after the remainder of the proceeds has been deducted. The amount of the security was much more than sufficient to pay all the accrued interest between the adjudication and the date of the liquidation of the security.

Wallace Macfarlane, for trustee.

Rufus W. Sprague, for claimant.

HAND, District Judge. I cannot find that this question has been raised under the present bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), or under any of the other acts, although the negative of it has been the settled law for a long time in England. It is hardly necessary to cite authorities to show that the creditor, before the debtor's insolvency, has the right to marshal the security upon interest first and principal afterwards. This rule itself seems to have been in some doubt early in America, but it was laid down in the note to Williams v. Houghtaling in 3 Cow. (N. Y.), on page 87, and I think it cannot be disputed that it is the law, generally speaking, at present. It certainly was adopted by the Supreme Court in Story v. Livingston, 13 Pet. 359, 371, 9 L. Ed. 1108, and it is quite obvious that otherwise the debtor might compel the creditor to leave the interest unpaid and keep reducing the principal. Moreover, the creditor, in the absence of any provision to the contrary, has in general the right to attribute payments as he pleases.

The bankruptcy act provides that liens, as would in justice necessarily be the case, shall not be affected by bankruptcy, and the mortgagee collects all interest upon his claims if the security is sufficient. Coder v. Arts, 152 Fed. 943, 82 C. C. A. 91, 15 L. R. A. (N. S.) 372. Section 57h provides that the value of the securities shall be determined by converting them into money "according to the terms of the agreement pursuant to which such securities were delivered to such creditors." The common law being, as it is, an implied term of the agreement under "which such securities are delivered," he may marshal the securities against interest, and that right is a part of the lien itself. The statute directs that proof be made for the balance after the value as so ascertained is credited. The question comes down to what value shall be credited upon the claim. If the contract expressly provided that certain expenses of collection should first be paid out of the security, I suppose no one will contend that bankruptcy will change that provision, and that the full value of the security must be credited upon the amount of the claim without first deducting those expenses allowed by the very agreement. I think interest is in the same category as any other deduction which the agreement may allow. By the implied term of the agreement the creditor has the right before he pays any of the face of the claim to make certain deductions, among which is the deduction for interest accrued upon it. The balance is all that is applicable to payment. This is the course which the referee has adopted, and I think he is right.

As I have said, the English law has for a long time been to the contrary, and, although this is not binding upon me, I should regard it as of the greatest moment, except in a case where the rule clearly arises through inadvertence. I say it with the utmost respect. The rule appears to have originated in two cases, Ex parte Wardell (1787) and Ex parte Hercey (1792), not originally reported, except in 1 Cooke's Bankruptcy Law (4th Ed., 1799) p. 181. The full order made in each case may be found in Appendix A to 2 Montague and Ayrton,

in which the learned reporters seem to indicate a doubt as to whether the cases in fact decided what they are said to decide in 1 Cooke's Bankruptcy Law, 181. I cannot, however, doubt that they are valid precedents, and the law seems to have started out with those two cases decided by the Chancellor squarely upon the point. No opinion, however, which has come down to the present time, was given in either. In 1794 Lord Loughborough promulgated among his orders in bankruptcy an order for the liquidation of securities by a mortgagee which is at least quite ambiguous upon this point in its language. 2 Cooke's Bankruptcy Law (4th Ed.) p. 379. Indeed, from the language of this order, it would seem to follow that the creditor was entitled to prove for the whole deficiency. It is quite clear, too, that the order caused trouble at the bar; for in 1798 in Ex parte Badger, 4 Vesey, 165, the rule came for construction before Lord Loughborough (not Lord Eldon, as is stated in one of the later cases). Lord Eldon was at that time at the bar and argued the case for the creditor. He conceded that the two cases in Cooke were against him, but contended that the words of the order had raised doubt at the bar. Lord Loughborough, however, without discussion, construed his own order in accordance with Ex parte Wardell and Ex parte Hercey, and this seems to have settled the law in England from that time.

In Ex parte Ramsbottom, 2 Mont. & Ayrton, 80, Lord Eldon decided that the mortgagee must credit the full amount of the security against principal and interest up to the date of the commission, and the question came up upon appeal to the Court of Review in Bankruptcy, as to whether the rents and profits arising from the security between the date of the commission and of the selling order should be credited upon interest which arose during the same period, or whether that, too, must be credited upon the face of the claim. To hold this was too much for the obvious justice of the situation, and consequently the court, without much regard for consistency, held that the rents arising after the date of the commission should be credited against interest during the same period. This case is criticised in Appendix A to the volume in which it occurs by the learned reporters, and their criticism seems to be well founded. The analogy is apposite which they suggest, that where a creditor has security for two claims, one provable and the other unprovable he may marshal his security against the unprovable claim. They very pertinently ask whether there is any valid distinction between that and the right to marshal the security against interest falling due after the date of the commission.

In re Penfold, 4 J., De G. & Sm. 282, however, follows the rule in Ex parte Badger, as does also In re Savin, 7 Chanc. 760, a case in the Court of Appeal. On the other hand, Justice North, in the year 1888, in Re Talbott, 38 Chanc. Div. 567, made a contrary decision in ignorance of In re Savin; but he is said to have subsequently thought he was in error. Quartermaine's Case, [1892] 1 Chanc. Div. 639. In the last-mentioned case Stirling, J., wrote a long opinion, reciting the history of the law to some extent as I have stated it above, and deciding in accordance with Ex parte Badger. I think that settled the law beyond question; but, if any doubt remained it was settled by

171 F.—48

Mr. Justice Vaughan Williams. In re Bonacino (1894) 1 Manson, 59. After that case there can be no doubt as to the rule in England.

As I have said, it was criticised, in my judgment with great effect, by the reporters in Appendix A to 2 Mont. & A., and likewise the inconsistency was pointed out by Stirling, J., in Quartermaine's Case, supra, of allowing to be credited on subsequent interest the rents and dividends from the securities which fall due after adjudication. No doubt the increase on the security is a part of the security itself and should follow the same rule. The only ground for an exception is that the increase between the date of the adjudication and the liquidation of the security is to be regarded as the return for the loss involved in waiting till it is realized; but, if so, consistency would require the result that a security which bears no increase should be discounted as of the date of the adjudication, a proposition which no one has suggested.

If, however, my analysis of the situation at the outset of this opinion is correct, the rule itself is wrong. I have less hesitancy than I otherwise should in departing from it, in that we have no statement which has come down to us of the grounds of its original adoption. It is quite clear that the bar had considerable doubt as to the meaning of Lord Loughborough's order of 1794, and that doubt, I respectfully insist, is much more than justified by the terms in which it was made. Lord Loughborough, in settling the construction of that rule in Ex parte Badger, avowedly only meant to·follow precedents already in existence, which it is possible he may not have had in mind at the time the order was promulgated. Under these circumstances, in spite of the extremely persuasive character of any rule so well settled in English·law, I cannot feel that it should be binding here.

Of course, in a case in which the security was not sufficient to pay the interest which accrued upon the claim from the date of the adjudication until its liquidation, I do not mean to be understood to hold that the creditor could prove for any part of that interest remaining unpaid. In no event could the creditor prove for more than the amount of the claim at the time of the adjudication. I only decide that the implied right given him under the original contract of marshaling the security in the first instance against the interest is not taken from him by the bankruptcy of the debtor.

The case of Commissioners v. Hurle (C. C. A.) 169 Fed. 92, 94, does not in the least militate against the construction which I have placed upon section 57h.

In the other·three cases the answer to the referee's question will be likewise in the affirmative.