## Byrd *v.* Mullinix.

### Opinion delivered June 4, 1923.

1. BANKRUPTCY—EFFECT OF FILING PETITION.—The filing of a petition by one's creditors operates to impound money then in his possession, and he could not defeat their right to have it applied towards the satisfaction of their demands.

2. BANKRUPTCY—LIABILITIES ENFORCEABLE AGAINST HOMESTEAD.— Where, after a petition in bankruptcy has been filed, and before an adjudication in bankruptcy is made, the bankrupt used funds belonging to him to pay off a mortgage indebtedness on the homestead owned jointly by him and his wife, the court properly decreed that the trustee in bankruptcy should have a lien on the homestead, though the wife was not a party to the bankruptcy procedings, and likewise that the trustee should have judgment against the mortgagee to whom the money was unlawfully paid.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

*Basil Baker* and *Gautney & Dudley,* for appellants.

The filing of the involuntary petition in bankruptcy against appellant did not operate to impound money in his hands for the creditors, did not operate as an attachment of his property until after adjudication. 5 Cyc. 342, par. B; 98 Fed. 582, § 704, Bankruptcy Act, 1898. Bankrupt had the right at any time to the date of adjudication to convert non-exempt assets into exempt property. 33 Am. Bankruptcy Rep. 677, adopts rule in 39 Ark. 571. See also 99 Ark. 45; 109 Ark. 443. The court erroneously relied on a statement contained in 184 U. S., 1, 46 L. ed. 405, which is fully discussed in 183 Fed. 913; 219 Fed. (C. C. A.) 397; 7 C. J. 158-160, par. 5. Undisputed testimony shows that the money paid to West was the property of Ada V. Byrd. Court erred in decreeing a lien in favor of the trustee in bankruptcy, upon property held by Byrd and wife as tenants by entirety. 124 Ark. 390; 66 Ark. 305; 144 Ark. 159.

*Cooley & Adams,* for appellee.

The $1,000 paid to West was the property of the bankrupt, not the property of his wife, as claimed. 14 Ark. 69; 45 Ark. 520; 73 Ark. 174; 133 Ark. 250; 134 Ark. 241; 136 Ark. 115; 132 Ark. 268; 132 Ark. 123; §§ 60-a and 60-b, Bankruptcy Act 1898, as amended. The filing of the petition in bankruptcy conferred jurisdiction upon the bankruptcy court over all property of the alleged bankrupt for all purposes as of that date. Sec. 1 Bankruptcy Act 1898 as amended. 148 U. S. 1; 7 Am. B. R. 224, 46 L. ed. 405; 137 Fed. 881, 14 Am. B. R. 404; 172 Fed. (C. C. A.) 353, 22 Am. B. R. 753; 169 Fed. 92, 22 Am. B. R. 209; 222 U. S. 300, 56 L. ed. 208, 27 Am. B. R. 262; 228 U. S. 474, 57 L. ed. 927, 30 Am. B. R. 1; 239 U. S. 268, 60 L. ed. 275, 35 Am. B. R. 814; 236 Fed. (C. C. A.) 644, 38 Am. B. R. 394; Collier on Bankruptcy, §§ 18-111, pp. 458, 459, and notes. See also 88 Ark. 519; 114 Ark. 316; 242 S. W.

(Ark.) 384. The court did not create a lien on an estate held by the entirety. 61 Ark. 388; 66 Ark. 305. Preferred creditor or gratuitous donee need not be a party to the bankruptcy proceeding to be held to account for their preference. Sec. 60-a, Bankruptcy Act 1898, as amended; 3 R. C. L. 271, sec. 96.

Smith, J. On April 13, 1922, appellee, as trustee in bankruptcy, filed a complaint in the chancery court against W. W. Byrd and Ada V. Byrd, his wife, and J. R. West, alleging that on February 2, 1922, the creditors of W. W. Byrd filed in the United States District Court at Jonesboro a petition to have W. W. Byrd declared an involuntary bankrupt, and that on February 24, 1922, the court made an order so adjudging. That on February 11, 1922, Byrd paid to West a thousand dollars in partial satisfaction of a note held by West, executed by Byrd and his wife, in part payment of the purchase price on the homestead occupied by Byrd, and which he had bought from West. Byrd bought the house from West on March 1, 1919, and the purchase price was $5,000, of which $1,250 was paid in cash; $2,500 of the purchase money was represented by a mortgage on the house in favor of the American Trust Company of Jonesboro, which Byrd assumed; and the remaining $1,250 was represented by a note due March 1, 1920, on which the thousand-dollar payment was made. The complaint alleged that the payment to West was fraudulent and void because Byrd was insolvent. His place of business had been levied upon under an execution, and the payment had been made after the petition in bankruptcy had been filed, and when West had knowledge thereof. The complaint prayed that the payment be declared void as against the creditors of Byrd, and that West be required to reimburse the creditors in said amount, and that he be required to rely upon and proceed under his mortgage security to obtain satisfaction of his own debt, and that a lien be declared upon the homestead for the payment of said thousand dollars.

Byrd and his wife answered and denied all the allegations of the complaint, and alleged that the payment was made by Mrs. Byrd with her individual funds.

West answered and admitted the receipt of the thousand dollars, but denied knowing that the money belonged to the trustee in bankruptcy, but he admitted that he knew the creditors had filed the petition at the time the payment was made to him. He prayed that, in the event he was required to refund the money, his lien be declared superior to that of the other creditors, and that his lien on the homestead be foreclosed for the full amount of said indebtedness.

The question of fact in the case is whether the thousand-dollar payment was made with funds belonging to Mr. Byrd or with the funds of his wife; and the court expressly found the fact to be that the money belonged to him. We concur in this finding, and announce that conclusion, without attempting to review the testimony leading thereto.

Having made this finding, the court below directed West to repay to the trustee in bankruptcy, the plaintiff in the action, the thousand-dollar payment, and then granted West the relief prayed by him in his cross-complaint.

Counsel for Byrd insists the decree should be reversed, even though that finding is made from the testimony, on the following grounds:

1. That the filing of an involuntary petition in bankruptcy does not operate as an attachment of the property of the bankrupt until adjudication.

2. That the bankrupt had the right at any time, up to the date of adjudication, to convert non-exempt assets into exempt property.

3. The indebtedness to West, secured by a vendor's lien on the homestead, was past due, and West had the right to receive payment and Byrd had the right to make the payment up to the date of adjudication.

4. The court erred in undertaking to give to the trustee in bankruptcy a lien upon the joint homestead property of Byrd and his wife, or in attempting to subrogate the creditors to the rights of West, since Mrs. Byrd was not a party to the bankruptcy proceeding.

We think the finding that the payment was made with Byrd's money is decisive of the question stated, because the payment was made after the petition had been filed, and West had notice thereof when he accepted the payment.

We think it immaterial that Byrd was adjudged a bankrupt upon an involuntary petition, rather than upon his own voluntary petition, for the fact adjudged was that he was a bankrupt, and this adjudication was made upon a petition filed before the payment was made.

An involuntary petition was filed in the case of *Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U. S. 300, and what was there decided is conclusive of the questions raised here. Mr. Justice DAY, for the court, said: "Whatever may be the limitations of the doctrine declared by this court, speaking by the late Chief Justice FULLER in *Mueller* v. *Nugent*, 184 U. S. 1, 14, 46 L. ed. 405, 411, 22 Sup. Ct. Rep. 269, where it is said: 'It is as true of the present law (1898) (30 Stat. at L. 544, chap. 541, U. S. Comp. Stat. 1901, p. 3418) as it was that of 1867 (14 Stat. at L. 517, ch. 176), that the filing of the petition is a *caveat* to all the world, and, in effect, an attachment and injunction. *International Bank* v. *Sherman*, 101 U. S. 403, 25 L. ed. 866. And, on adjudication, title to the bankrupt's property became vested in the trustee (§§ 70, 21e) with actual or constructive possession, and placed in the custody of the bankruptcy court,' it is none the less certain that an attachment of the bankrupt's property, after the filing of the petition and before adjudication, cannot operate to remove the bankrupt's estate from the jurisdiction of the bankruptcy court for the purpose of administration under the act of Congress. It is the purpose of the bankruptcy

law, passed in pursuance of the power of Congress, to establish a uniform system of bankruptcy throughout the United States, to place the property of the bankrupt under the control of the court, wherever it is found, with a view to its equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far *in rem* that the estate is regarded as *in custodia legis* from the filing of the petition. It is true that, under sec. 70a of the act of 1898, the trustee of the estate, on his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudicated a bankrupt; but there are many provisions of the law which show its purpose to hold the property of the bankrupt intact from the time of the filing of the petition, in order that it may be administered under the law if an adjudication in bankruptcy shall follow the beginning of the proceedings. Paragraph 5, sec. 70a, in reciting the property which vests in the trustee, says there shall vest 'property which, prior to the filing of the petition, (the bankrupt)     *   *   *     could by any means have transferred or which might have been levied upon and sold under judicial process against     *   *   *   (the bankrupt).' Under sec. 67c attachments within four months before the filing of the petition are dissolved by the adjudication, in the event of the insolvency of the bankrupt, if their enforcement would work a preference. Provision is made for the prompt taking possession of the bankrupt's property, before adjudication, if necessary (69a). Every person is forbidden to receive any property after the filing of the petition, with intent to defeat the purposes of the act. These provisions, and others might be recited, show the policy and purpose of the bankruptcy act to hold the estate in the custody of the court for the benefit of creditors after the filing of the petition and until the question of adjudication is

determined. To permit creditors to attach the bank-rupt's property between the filing of the petition and the time of adjudication would be to encourage a race of diligence to defeat the purposes of the act and prevent the equal distribution of the estate among all creditors of the same class, which is the policy of the law. The filing of the petition asserts the jurisdiction of the Fed-eral court, the issuing of its process brings the defend-ant into court, the selection of the trustee is to follow upon the adjudication, and thereupon the estate belong-ing to the bankrupt, held by him or for him, vests in the trustee. Pending the proceedings, the law holds the property to abide the decision of the court upon the ques-tion of adjudication as effectively as if an attachment had been issued, and prevents creditors from defeating the purposes of the law by bringing separate attach-ment suits, which would virtually amount to preferences in favor of such creditors. See in this connection the well-considered cases of *State Bank* v. *Cox,* 74 C. C. A. 285, 143 Fed. 91 (C. C. A. Seventh C); *Shawnee County* v. *Hurley,* (C. C. A. Eighth C.) 94 C. C. A. 362, 169 Fed. 92, 94.''

We have quoted thus at length because the ques-tions there decided are conclusive of the points raised by appellant; and upon the authority of that case we hold that the filing of a petition by Byrd's creditors op-erated to impound the money then in his possession, and he could not defeat their right to have it applied towards the satisfaction of their demands.

It appears that Byrd and his wife took title to their homestead as tenants by the entirety, and it also appears that Mrs. Byrd was not a party to the bankruptcy pro-ceeding. We think, however, that, notwithstanding these facts, no error was committed in adjudging a lien on the homestead to the extent of the thousand-dollar payment. The effect of the decree below is to adjudge that Byrd could not put the money in property which was itself beyond the reach of creditors, and to compel its disgorge-

ment.   West had a lien on the homestead to secure the payment of the $1,250 and the interest thereon.   The court adjudged the thousand dollars was wrongfully paid West by Byrd, because of the pendency of the bankruptcy proceeding, and we concur in that view.   West should therefore pay this thousand dollars to the trustee in bankruptcy, and when he has done so the payment to him is annulled and his debt is left unimpaired, as is also his security.   It is to be assumed that West will refund the thousand dollars to the trustee, as the court directs; and it is in the event only that he does not do so that the trustee is given the right to enforce the lien of West to the extent of this payment.

In other words, Byrd is denied the right of having the mortgage on his home reduced by the payment which he wrongfully made to West, and the creditors are awarded the benefit of this payment, and their right thereto is worked out either through West or against the property itself.   This decree does Mrs. Byrd no injustice, although she was not a party to the bankruptcy proceeding, because she has no right to have the mortgage lien on her home discharged, in whole or in part, by a payment of money by her husband to which his creditors are entitled.

The decree of the court below is therefore affirmed.