MAYOR AND ALDERMEN OF THE CITY OF VICKSBURG *v.* HENSON, RECEIVER OF THE VICKSBURG WATER WORKS COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 546.   Argued October 28, 1913.—Decided December 1, 1913.

A decree of the District Court to the effect that a contemplated issue of bonds, the issuance of which the bill sought to enjoin as wholly illegal, was illegal at that time, leaving open the question of whether it might be legal at a subsequent time, *held*, under the circumstances of this case, to be a final decree from which an appeal could be taken to the Circuit Court of Appeals.

Although the original bill depended solely upon diverse citizenship, independent grounds of deprivation of Federal rights which existed prior to the filing of the bill may be brought into the case by amended bill, and if so, the jurisdiction of the District Court does not rest solely on diverse citizenship and the judgment of the Circuit Court of Appeals is not final but an appeal may be taken to this court. *Macfadden* v. *United States*, 213 U. S. 288.

While the enforcement of the rule of *res judicata* is essential to secure the peace and repose of society, it is equally true that to enforce the rule upon unsubstantial grounds would work injustice.

A decree is to be construed with reference to the issues it was meant to decide; its nature and extent is not to be determined by isolated portions thereof, but upon the issue made and what it was intended to accomplish.

A decree in a former action between a municipal water company and the municipality that the former had an exclusive contract for a specified period and that the latter could not issue bonds for the purpose of establishing a municipal water supply to be forthwith put into operation, rendered while the franchise had a long period to run, *held* in this case not to be *res judicata* as to the right of the municipality to issue bonds within a short time prior to the expiration of the franchise for the purpose of erecting water works which were not to be put into operation until after the expiration of the existing franchise.

203 Fed. Rep. 1023, reversed.

THE facts, which involve the jurisdiction of this court of appeals from judgments of the Circuit Court of Appeals and the extent to which a former judgment is *res judicata* of the right of a municipality to issue bonds for establishing a water supply in view of existing contracts with a water works company, are stated in the opinion.

*Mr. T. C. Catchings, Mr. O. W. Catchings, Mr. George Anderson* and *Mr. John Brunini* for appellants, submitted.

*Mr. Edgar H. Farrar,* with whom *Mr. J. C. Bryson, Mr. Joseph Hirsh* and *Mr. Richard F. Goldsborough* were on the brief, for appellees.

MR. JUSTICE DAY delivered the opinion of the court.

This suit originated in the District Court of the United States for the Southern District of Mississippi, where an injunction restraining the appellants from constructing a water works system during the term of a certain franchise previously granted by the city of Vicksburg was allowed upon the complaint of W. A. Henson, Receiver of the

Vicksburg Water Works Company, one of the appellees herein (whom we will hereafter call "the receiver"), and the decree upon appeal was affirmed by the Circuit Court of Appeals for the Fifth Circuit (203 Fed. Rep. 1023), from which affirmance this appeal is taken.

The case, as made out in the District Court and shown by the record, appears to be:

The receiver alleged that in 1886 the city, under authority of an act of the legislature, by ordinance granted to Samuel R. Bullock & Company a franchise to furnish the city with water for a term of thirty years; that he had succeeded to the rights and interests of Bullock & Company; that he was paying taxes upon the property of the Vicksburg Water Works Company and was entitled to the rights and privileges of a taxpayer; that in 1900 the city of Vicksburg attempted to abandon the contract and to build and operate a water works system of its own, and that in a suit instituted in the Circuit Court of the United States for the Southern District of Mississippi, such action had been enjoined; that by the final decree therein it was, among other things, ordered "that the defendant refrain from constructing water works of its own until the expiration" of the franchise, and that, upon appeal to this court, such decree was affirmed. The pleadings, final decree and opinion of this court in the former case and the franchise of 1886, were introduced into the record in this case as exhibits, and, to save repetition, reference is made to the franchise as quoted in 185 U. S. 65, to the opinion in 202 U. S. 453, and to the outline of the pleadings in that case as set forth in those reports.

The receiver alleged further that the city had since made efforts to free itself from the franchise, and specified various suits and negotiations to that end; that early in 1912 the appellants by resolution and election undertook to authorize the sale of bonds for the construction of a water works plant, which was not to be operated until

after the expiration of the franchise; that he would be compelled to pay taxes upon such bonds and that the issuance and sale of the bonds and the construction of the plant would depreciate the value of the Water Works Company's property; that the city was commencing the construction of a plant too long before the expiration of the franchise; that the purpose of the city was really to depreciate the value of the Water Works Company's plant so that the city might buy it at a price materially less than its actual value; and that the bond election, for several reasons, which the receiver stated, under the statutes and constitution of Mississippi and because of fraud was of no effect, and the receiver offered to sell the plant at any time upon appraisement. The receiver prayed that the appellants be enjoined from issuing bonds for the construction of a water works system and from taking any further steps toward the building of such plant during the term of the franchise, for the reason that the matter of construction of the plant during such time was *res judicata* and that such construction would violate the franchise, and further that the bond election was void. The receiver also prayed for an injunction restraining the appellants from letting contracts for the laying of certain water mains, in violation of the franchise and of the decree in the former suit.

The appellants denied that the decree in the former case precluded the question raised here, and that the construction by the city of its own water works system would violate the terms of the franchise; that the receiver was, or was entitled to the rights and privileges of, a taxpayer, and alleged that the statement by the receiver of the dealings and negotiations between the city and the Water Works Company was irrelevant and false. They also denied that the receiver or the Water Works Company, as a taxpayer, would be affected by the bond issue; and alleged that, if the issuance of the bonds and construc-

tion of the plant should depreciate the property of the Water Works Company, it would be something for which it would not be responsible. They further denied that the steps taken by the city were premature, in view of the long time that must elapse before the expiration of the franchise, and that the city did not intend to build a plant; and alleged that the purpose of the Water Works Company was to compel the city to buy its plant at an exorbitant price; and they denied that the bond election was void. The appellants further alleged that if the decree should be construed as contended for by the receiver, the court below, as a court of equity, would not at that time give the decree that effect, for the reason that the situation of the parties was so changed as to make it inequitable to prohibit the appellants from taking the action sought to be enjoined; that the receiver by permitting the city to lay certain mains had conceded the appellants' right to construct a water works plant and was estopped from contesting such right; that the receiver and the Water Works Company actively participated in the election, conceding appellants' right to build its own water works system, and therefore were estopped from asserting the contrary; that the receiver, by conceding appellants' right to construct its plant, itself construed the decree as only enjoining competition and that the court should give effect to the decree as construed by the parties, and that the decree did not attempt to enjoin the sale of bonds and that that is all that is sought to be restrained by this suit. The appellants also denied that the letting of contracts for laying mains would violate either the decree or the franchise.

Upon petition, Lelia Boykin, a taxpayer of the city of Vicksburg, the other appellee herein, was, upon order, admitted as a party to the suit, and by proper pleadings issues were made with reference to her as such taxpayer.

Upon final decree the court held that the receiver was

entitled to the relief prayed for and ordered that the appellants be enjoined from constructing a system of water works and from disposing of the bonds covered by the suit during the term of the franchise, and in its opinion the court based its decision upon the decree made by it and its affirmance in 202 U. S. and decided that the matter was *res judicata.* Upon appeal to the Circuit Court of Appeals the decree of the District Court was affirmed upon the ground that the decree and affirmance in the case in 202 U. S. constituted an estoppel. The case was thereupon brought here upon appeal, the assignments of error asserting that the Circuit Court of Appeals erred in affirming the decree of the District Court, in holding that the decree affirmed in 202 U. S. was an estoppel and that the appellants had no right to build a water works system before the expiration of the franchise and in not deciding that the receiver was estopped to assert that appellants did not have such right.

A motion was made to dismiss the appeal, first, upon the ground that the decree was not final in the District Court, and hence was not appealable to the Circuit Court of Appeals, because it left undisposed of one of the substantial issues in the case. That contention arises from this alleged situation: The pleadings of the receiver, as well as the petition filed by the intervenor, Lelia Boykin, attacked the right to issue the bonds in question upon a ground independent of the former adjudication, namely, because the election at which the bonds were authorized to be issued was illegal for the reason that the city failed to make the statutory publication of the election and that the curative act was unconstitutional, for the reason that the city had exceeded the limit of indebtedness allowed under chapter 142 of the laws of Mississippi for 1910, the exception in such act being unconstitutional, and for the reason that the bond election was held under an ordinance purporting to amend the charter of the city which ordi-

nance was itself void, and for fraudulent and corrupt practices and for unlawful registration. This ground of attack, the appellees say, went to the right to issue the bonds to build a water works system at any time and rendered them invalid whether undertaken to be issued before or after the expiration of the Bullock franchise, and that such is the case is said to appear from reference to the final decree which was entered in the suit. The decree enjoined the appellants from building or constructing a system of water works or any part thereof within the city until after the eighteenth day of November, 1916, the date of the termination of the Bullock franchise, and it further provided:

"It is further ordered and decreed that the defendant, the Mayor and Aldermen of the City of Vicksburg, be and is hereby enjoined from disposing of the issue of four hundred thousand dollars ($400,000.00) of bonds mentioned and described in the pleadings with a view of constructing a water works system, or any part thereof, in said city during the life of the said franchise, that is, between now and the 18th day of November, 1916."

So much of the decree as relates to the bonds, it is contended, leaves open the right of the city to issue them after the expiration of the Bullock franchise, although they were attacked as being wholly illegal and the city wanting authority to issue them at any time.

It is true that the original bill contained allegations which went to the validity of the issue of bonds, if the same were proposed to be issued after the expiration of the Bullock franchise, as well as before the expiration of that time, and the prayer of the original bill among other things asked for an injunction restraining the defendant city from issuing the bonds or taking any action to that end by virtue of the election. In the amended and supplemental bill filed in the case, however, not only allegations by way of amendment were made, but the case was restated at great length and the prayer of the bill asked upon

final hearing for "a decree against the said defendant holding the said bond election void and without effect, and the said defendant without power to issue and float said bonds for the purpose of building a water works plant during the life of the Bullock franchise, and for an injunction against the said defendant restraining it from issuing bonds under the said election and from taking any further steps looking to the building of a water works plant during the life of the said Bullock franchise," and for general relief. When Lelia Boykin intervened, she filed a petition averring that she was the owner of real estate in and a taxpayer of the city of Vicksburg, and a citizen and resident of Georgia, adopting the allegations of the original bill and amended and supplemental bill, except so much thereof as set up the former adjudication in favor of the Water Works Company, and joining in the original complainant's prayer for relief and also asking for general relief.

It may be true that there were allegations in the pleadings which permitted or required a consideration of the law under which the bonds were to be issued for the purpose of erecting a water works system and which were independent of the alleged claim of *res judicata*, but the record and proceedings make it evident that the court and the parties concerned treated the bill as an attack upon the right of the city to proceed to build a water works system before the expiration of the Bullock franchise, although to be operated thereafter. The opinion of the court and the decree shows that the court so regarded it, and no objection to this disposition of the case was made by any of the parties, and when the case reached the Circuit Court of Appeals a motion was made to dismiss upon the ground that the proceeding was merely ancillary to the decree of the court, affirmed in this court (202 U. S. 453), enjoining the city from constructing and operating a plant of its own during the term of the fran-

chise. The decree was final as to the city's right to do what it was then proposing to do, to issue bonds and erect a system of water works to be used after the expiration of the Bullock franchise. The decree as rendered prevented the city from doing this. There was no reservation of the right to a further decree as to the legality of the bonds, and no retention of jurisdiction after the decree for any purpose. Neither in the Circuit Court of Appeals nor in the District Court was there any attempt to require the court to consider the case in its further aspect, but as we have said both courts and all parties treated the case as presenting a controversy concerning the right of the city to proceed, as it was about to do, to sell the bonds and build a plant before the expiration of the franchise in question. The record thus considered, we think there was a final decree in the District Court from which an appeal could be taken to the Circuit Court of Appeals.

The further contention is made that the jurisdiction of the Circuit Court of Appeals was final because the jurisdiction of the District Court as originally invoked depended solely upon diverse citizenship. But it appears that when the amended and supplemental bill was filed there were added to the ground of original jurisdiction allegations concerning the proper construction of the contract rights of the receiver, which attacked the proposed action of the city on the ground that it would be destructive of constitutional rights. We think those allegations brought into the case a ground of jurisdiction independent of diversity of citizenship. They were grounds which existed before the suit was begun, which might have been averred in the original bill and which were brought into the case by the amendment. We think therefore that the jurisdiction of the District Court did not rest solely upon diversity of citizenship, but upon the additional ground of deprivation of Federal right. In this view the decision of the Circuit Court of Appeals is not final, and an appeal may

be taken to this court. *Macfadden* v. *United States*, 213
U. S. 288.

Coming to the question whether the former decree disposed of the rights of the parties, as was held in the court
below, which judgment was affirmed by the Circuit Court
of Appeals, it is undoubtedly true that a right, question or
fact put in issue and decided by a court of competent
jurisdiction must be taken as settling the rights of the
parties in respect to such controversy and while it remains
undisturbed is conclusive between them. The enforcement
of this rule has been repeatedly said to be essential to
secure the peace and repose of society and in order that
an end may be made of controversies between parties who
have once invoked and have had the determination by a
competent judicial tribunal of the matters in dispute
between them. It is no less true that to hold upon any
unsubstantial ground that a controversy has been thus
concluded is to do an injustice to litigants. We must
therefore be careful to see, when the contention of former
adjudication is made, that the matter was actually presented and decided and the rights of the contending parties thereby concluded. We think that an examination
of the record in the former case, put in evidence in this
case, does not support the contention that the matter here
in issue was then adjudicated and determined. It is
true there is some broad language in the decree. It
provided:

"Fourth. That the said defendant refrain from in any
manner accepting the benefits of or proceeding under the
act of the Legislature of the State of Mississippi, approved
March 9th, 1900, and from issuing bonds under and by
virtue of said act or any other act, or ordinance for the
purpose of erecting water works of its own during the
period prescribed in said ordinance contract and franchise.

"Fifth. That the said defendant refrain from constructing water works of its own until the expiration of the

period prescribed in the said ordinance contract and franchise dated 18th day of November, 1886."

The fifth paragraph read alone without regard to the pleadings in the case would broadly enjoin the city from constructing a water works system of its own until the expiration of the period named in the franchise held by the complainant. The fourth paragraph used language in enjoining the issuance of bonds which concluded with an injunction "from issuing bonds under and by virtue of said act or any other act, or ordinance for the purpose of erecting water works of its own during the period prescribed in said ordinance contract and franchise." It is also true that the court in concluding its opinion in 202 U. S. said that it found "no error in the decree of the Circuit Court enforcing the contract rights of the complainant and enjoining the city from erecting its own works during the term of the contract."

It is well settled, however, that a decree is to be construed with reference to the issues it was meant to decide. *Graham* v. *Railroad Company*, 3 Wall. 704, 710; *Reynolds* v. *Stockton*, 140 U. S. 254; *Vicksburg* v. *Vicksburg Water Works Co.*, 206 U. S. 496, 507; *Haskell* v. *Kansas Natural Gas Co.*, 224 U. S. 217, 223. In *Barnes* v. *Chicago, M. & St. P. Ry. Co.*, 122 U. S. 1, this court, speaking by Mr. Chief Justice Waite, said (p. 14):

"Every decree in a suit in equity must be considered in connection with the pleadings, and, if its language is broader than is required, it will be limited by construction so that its effect shall be such, and such only, as is needed for the purposes of the case that has been made and the issues that have been decided. *Graham* v. *Railroad Company*, 3 Wall. 704. Here the suit was by and for creditors to set aside the mortgage to Barnes and the foreclosure thereunder, because made and had to hinder and delay them in the collection of their debts. The decree, therefore, although broader in its terms, must be held to mean

no more than that the foreclosure was void as to these creditors, whose claims were inferior in right to that of the mortgage, and that the Minnesota Company was restrained and enjoined from asserting title as against them."

What was the situation which confronted the parties at the time of the institution of the original suit, and what rights were the Water Works Company striving to protect? The Company contended that it had a franchise good for thirty years and that this franchise was exclusive, at least in so far as it would prevent the city from building a water works system of its own and operating it in competition with the plaintiff company and in destruction of its rights yet to be enjoyed under its unexpired franchise. At that time the franchise had over half its term yet to run. There was no indication on the part of the city that it intended to build a water works system of its own and then await the expiration of the franchise before it operated such system. The city contended for and maintained the right to erect its own system and operate it at that time and in competition with the Water Works Company. This competition it was contended would be destructive of the rights and property of the complainant and virtually destroy the exclusive privilege which the city had granted to it for the period of thirty years. It was only after the conclusion of the litigation that the city undertook to construct a water works system, withholding operation thereof until the expiration of the franchise belonging to the Water Works Company. It was driven to that position by the decree against it in the former case. The building of such water works system, and not the one that it originally intended, was only proposed by the city after it had lost the original controversy, in which it contended for the right to erect a competing plant to be operated during the term of the franchise. Reference to the original bill filed in the former case confirms this view, where the following appears:

"By reason of said ordinance and contract [the franchise] said city has no right within the period of thirty years to engage in the business of supplying water to the inhabitants of said city in competition with said Bullock & Company, or their assigns, notwithstanding which, said act [under which the city was then proceeding to erect a plant] authorizes and permits said city to construct and maintain water works for said purpose;" and the prayer, in part, asked that the defendant might be "decreed from constructing or acquiring and operating a system of water works in competition with your orator's water works." The amended and supplemental bill read, in part, as follows:

"Therefore said city by its contract and ordinance with S. R. Bullock & Company and assigns are precluded from issuing and selling bonds to build, construct, maintain and operate a water works of its own, as provided by said legislative act and said resolution and said election of 1900, in competition with your orator against its own contract.

"The premises considered, your orator prays that this Honorable Court will enjoin the defendant from issuing and selling said bonds for the purpose of building and constructing water works of its own in competition with your orator."

In considering the rights of the parties and the position taken by them, this court in 202 U. S. 453 *et seq.* said (p. 458):

The rights of the Water Works Company under its exclusive contract, it alleged, "would be practically destroyed if subjected to the competition of a system of water works to be erected by the city itself." "We think it would be a palpable injustice to the stockholders to permit the competition of the city by new works of its own; which, whether operated profitably for the municipality or not, might be destructive of all successful opera-

tion in furnishing water to consumers by the private company." Stating the question of the power of the city to grant an exclusive contract: "Whether it can, in exercising this legislative power, exclude itself from constructing and operating water works for the period of years covered by the contract." (p. 469) "And unless the city has excluded itself in plain and explicit terms from competition with the Water Works Company during the period of this contract it cannot be held to have done so by mere implication." (p. 470) "These are the words of the contract and the question upon this branch of the case is, conceding the power of the city to exclude itself from competition with the grantee of these privileges during the period named, has it done so by the express terms used? It has contracted with the company in language which is unmistakable, that the rights and privileges named and granted shall be *exclusive*. Consistently with this grant, can the city submit the grantee to what may be the ruinous competition of a system of water works to be owned and managed by the city, to supply the needs, public and private, covered in the grant of privileges to the grantee? It needs no argument to demonstrate, as was pointed out in the *Walla Walla Case*, that the competition of the city may be far more destructive than that of a private company. The city may conduct the business without regard to the profit to be gained, as it may resort to public taxation to make up for losses. A private company would be compelled to meet the grantee upon different terms and would not likely conduct the business unless it could be made profitable. We cannot conceive how the right can be exclusive, and the city have the right at the same time to erect and maintain a system of water works, which may and probably would practically destroy the value of rights and privileges conferred in its grant." (p. 471) "We think it was distinctly agreed that for the term named the right of furnishing water to

the inhabitants of Vicksburg under the terms of the ordinance was vested solely in the grantee, so far at least as the city's right to compete is concerned."

And in 206 U. S. 496, where it was contended that the former adjudication was a bar to the rights contended for in regulating rates, this court in construing its former decision in 202 U. S. said (206 U. S. 506): that the former case "was regarded as settling the right of the Water Works Company under the contract, to carry on its business without the competition of works to be built by the city itself, as the city had lawfully excluded itself from the right of competition."

It is said that upon the argument in this court of the case in 202 U. S. the too broad character of the decree was brought to our attention. An examination of the briefs then filed shows that this objection rested upon the allegation that the decree would prevent the city from putting in hydrants and other facilities not covered by the contract. There was no suggestion that the city would be prevented from putting in its own water works for use after the expiration of the franchise.

The nature and extent of the former decree is not to be determined by seizing upon isolated parts of it or passages in the opinion considering the rights of the parties, but upon an examination of the issues made and intended to be submitted and what the decree was really designed to accomplish. We cannot agree with the court below or with the majority of the Circuit Court of Appeals that the effect of the former adjudication was to preclude the rights of the parties in the present controversy.

Upon the merits, irrespective of the effect of the former decree, we think the object and purpose of the franchise granted to Bullock & Company, and their successors, was to permit and protect the operation of a system of water works to the end of the franchise term. After that time the city was to be free to supply its inhabitants itself,

if it saw fit, or make other contracts with those who could supply the wants of the city in that respect. We see no reason why the city might not, if it so determined, make preparation for water supply to its own citizens which would be available upon the expiration of the contract, the contract accomplishing that purpose until by its terms it had expired. To appropriately accomplish this required time and we think the city was within its rights, not being obligated by any contract to purchase the works of the Water Works Company, the company having been content to accept the franchise without this requirement, and was free to make other adequate provision to meet this essential requirement of the inhabitants of the city.

The views we have expressed require a reversal of the judgment of the Circuit Court of Appeals, affirming the decree of the District Court. It is therefore ordered that the judgment be

*Reversed and the case remanded to the District Court of the United States for the Southern District of Mississippi, for further proceedings not inconsistent with this opinion.*