## HANNAN v. SLUSH et al.

(District Court, E. D. Michigan, S. D. April 20, 1925.)

No. 438.

**1. Wills ☞692, 693(1)—Will empowering tenant to appropriate part of property without jeopardizing object of trust, construed.**

Under will creating trust for payment to wife of specified amount monthly, bequeathing property when freed from trust to such charitable institutions as wife might in her will appoint, and empowering wife in her lifetime to devote portion of property to charitable institutions if in the judgment of the trustees this could be done with entire safety, keeping in mind the object of the trust, the wife could not irrevocably appropriate property to charity during her lifetime, if immediate effect would jeopardize object of trust, though trustees then decided that appropriation could be made at some future time without jeopardizing trust.

**2. Powers ☞16—Instruments creating powers are to be strictly construed.**

Instruments creating powers are to be strictly construed.

**3. Powers ☞32—Must be executed in mode prescribed by donor.**

When a certain mode of executing a power is prescribed by the donor, donee has no authority to execute such power in any other mode and any attempt so to do is void.

**4. Judgment ☞670—Consent decree dismissing widow's suit to set aside election to take under will held not res judicata in her subsequent suit to set aside exercise of power of appointment.**

Consent decree dismissing widow's suit to set aside election to take under will *held* not res judicata as to validity of her execution of power of appointment in subsequent action to set aside instrument of appointment, though, as a part of the general relief prayed in the first suit, she asked that court set aside instrument of appointment, since first suit was brought in her individual capacity to redress personal wrong, while second suit was instituted in her capacity as donee of the power.

**5. Judgment ☞720 — Judgment not res judicata in subsequent suit involving different cause of action except as regards questions actually presented, litigated, and decided.**

A judgment is not res judicata in a subsequent suit involving a different cause of action except as regards questions actually presented, litigated, and decided between same parties in such former suit.

In Equity. Bill by Luella Hannan against Matthew Slush and others. Decree for plaintiff.

See, also, 283 F. 211.

Alfred Lucking, of Detroit, Mich., for plaintiff.

Thomas G. Long, of Detroit, Mich., for defendants.

TUTTLE, District Judge. This is a bill to construe a will and to construe and set aside a certain so-called instrument of appointment purporting to have been executed pursuant to said will. The jurisdiction of the court is properly invoked on the ground of diversity of citizenship.

The plaintiff is Luella Hannan, who is the widow of William W. Hannan, deceased, a legatee under the will of said deceased, and a donee of certain trust powers created by said will. The will, which was duly executed December 18, 1916, gave lump sum legacies to various persons, aggregating approximately $1,000,000, and also provided for the payment, by testamentary trustees, of $2,500 monthly to the plaintiff during her life. It also created in the plaintiff certain powers of appointment of the residue of the estate to charity under conditions which will be hereinafter set forth in proper detail. The deceased, who was a resident of the city of Detroit and county of Wayne, died December 24, 1917. At that time his estate was of the value of approximately $4,000,000. The will was duly probated in the probate court of said county February 13, 1918. About the first of December, 1918 (the exact date being in dispute, uncertain, and immaterial for the purposes of this case), plaintiff executed a written instrument purporting to be an appointment, pursuant to the powers conferred on her as donee by the terms of the will, of the sum of $2,500,000 to certain trustees therein named, for the establishment and maintenance of a public auditorium for the people of Detroit. At the time of the execution of this instrument, the value of the estate was approximately $4,000,000, out of which there was due and unpaid about $1,000,000 in legacies and about $500,000 in state inheritance taxes; so that the payment at that time of the sum so appointed would have exhausted the entire estate and no source would have remained from which the plaintiff's aforementioned monthly stipend under the will could have been paid. This instrument, which will be hereinafter more fully referred to, was filed in said probate court February 18, 1919, indorsed with the approval of the testamentary trustees hereinafter mentioned. On December 16, 1918, plaintiff signed an election to take under said will, which election was duly filed in said probate court.

On October 14, 1919, plaintiff filed in this court a bill of complaint, against the trustees under the will and under the appointment mentioned, seeking to set aside her said election on the ground that its execution by her

had been procured fraudulently and wrongfully and while she was mentally incompetent to understand or know what she was doing. The bill, which will be referred to again later, also (and clearly as merely incidental to the setting aside of the election, which was obviously the main object of the bill) asked that said appointment be set aside on the same grounds. On May 26, 1921, while the bill last mentioned was pending in this court, plaintiff and the other surviving testamentary trustee under the will of the deceased entered into an agreement for the settlement of the suit so pending, by the terms of which plaintiff in her personal, individual capacity, received the sum of $400,-000 in addition to her monthly legacy of $2,-500 and agreed to withdraw her claim to take otherwise than under the will. Certain provisions were also included with reference to the appointment, which will be mentioned later. Shortly thereafter in accordance with the terms of said settlement agreement, a consent decree dismissing said bill was entered by this court, reciting that "the parties to this cause having come into court, by their respective counsel, and it appearing to the court that the subject-matter in this suit has been adjusted and settled by the parties, therefore, by the consent of counsel for plaintiff, on motion of counsel for defendants, it is ordered, adjudged, and decreed, that this cause be, and the same is, hereby dismissed." Thereafter, plaintiff commenced the present suit for the purpose of setting aside the aforesaid so-called instrument of appointment on the ground that its execution was in excess of the power created by the will on which it purports to be based, and that such execution was and is beyond the scope of such power and void, for reasons to be now discussed. The suit was referred, on bill and answer, to the master in chancery of this court, who, after hearing evidence and arguments, filed a lengthy report containing findings of fact and conclusions of law and recommending the entry of a decree in favor of plaintiff. To this report the defendants have filed exceptions on which the cause is now before the court. Unless plaintiff is now barred, by the former consent decree already referred to, from maintaining her present suit (a question to be hereinafter considered), the validity of the appointment in question depends upon the proper construction of the language of the will conferring on plaintiff such powers of appointment as she possesses. The will first provides for a trust for the payment of the various legacies specifically mentioned in the

will (aggregating, as already indicated, nearly $1,000,000), and the further payment, out of the invested funds of the estate, which are to remain in the hands and under the control of the testamentary trustees for that purpose, of the stated monthly installments of $2,500 to the plaintiff during her life. The will then proceeds with the following language:

"When said property is freed from said trust (whether it is freed at the death of my wife, Luella Hannan, or whether a part is freed then and a part of it at the later death of said Clay A. Greene), I bequeath the same to such charities for the people of the city of Detroit, and such charitable institutions in the city of Detroit (and by 'charities' I mean any form of public benefit, by no means excluding public parks and playgrounds) as my wife, Luella Hannan, may in her will appoint. She may give all to one charity or to one charitable institution or she may distribute the same among several charities or charitable institutions in such proportion as to her seems wise. If my said wife shall desire, during her lifetime, to devote a portion of said property to any of the charities or charitable institutions above described, and if in the judgment of the two remaining trustees this can be done with entire safety (keeping in mind the object for which the trust is created) she shall have the right to do so; and to justify the appropriation of money or property in this contingency, there shall be filed in the probate court a proper written instrument, signed by said wife and approved by each of the other trustees.

"If my wife shall fail, either entirely or partially, to designate, as hereinbefore required, to what charity or charitable institutions said property shall go, then I bequeath said property to the endowment fund of the Children's Aid Society of Detroit."

The instrument executed by the plaintiff purporting to appoint the $2,500,000 in question was in the following form and language:

"I, Luella Hannan, widow of William W. Hannan, late of Detroit, Michigan, under and by virtue of power given me by the will of my said husband, duly probated in the probate court of Wayne county, Michigan, and with the consent and approval of Flavius L. Brooke and Matthew Slush, executors and trustees under the said will,

"Do hereby appoint and direct the conveyance, assignment and transfer by the trustees under the will of William W. Hannan, deceased, at such time or times, in such install-

ments and at such valuations as may unanimously be determined by Flavius L. Brooke, Matthew Slush and myself, the said Luella Hannan, the trustees named in said will, of the property to be selected by said trustees from the property held in trust by them under said will to the amount and value in the aggregate of two and one-half million dollars ($2,500,000); said conveyance, assignment and transfer to be made to Luella Hannan, Matthew Slush, Flavius L. Brooke, Ralph L. Polk and William L. Carpenter, and their successors, as trustees and in trust in perpetuity, to use and devote the property so transferred and the income thereof for the purpose of acquiring a site for and building and maintaining thereon a public auditorium for the people of the city of Detroit, which shall be open to public use under such rules and regulations and upon such terms and conditions as said trustees or their successors may from time to time determine, and the said auditorium shall be called 'Hannan Memorial Hall.'

"Should any of said trustees herein named fail to accept said trust, die, resign or become otherwise incapacitated, the vacancy shall be filled by the circuit court for the county of Wayne, in chancery, or any court succeeding to its powers, upon the nomination of the remaining trustees.

"I authorize said trustees or their successors, under the direction and with the approval of the circuit court for the county of Wayne, in chancery, or of any court which may succeed to its powers, to organize a corporation wherein said trustees and such other person or persons as they may select shall be corporators to succeed to their trust hereunder and to the title to the trust property, and upon such organization they shall convey the trust property to said corporation and turn over to it their trust.

"Said trustees are hereby empowered to sell and convey any and all of the trust property coming into their hands under this trust. They shall use so much of the proceeds thereof as in their judgment is needed for the acquisition of said site and the erection of said building. The balance of the proceeds shall be invested and reinvested from time to time in such form or forms, not excluding sound public utility and industrial securities, as the trustees or their successors may select. The corpus of said remaining fund and the income arising therefrom shall be used by said trustees or their successors as in their discretion will best carry out the general purpose of this trust.

"No rent shall be exacted for the use of said building and no charge shall be made for admission, except such as in the judgment of said trustees or their successors may be needed (having in view the condition of the trust fund from time to time) to carry out the purpose of this charitable trust.

"Said trustees and their successors are hereby vested with all authority and powers needed or proper to carry out the object of this trust.

"In witness whereof I hereunto set my hand this 7th day of November, 1918."

The only act or statement of the testamentary trustees indicating their approval of said instrument consisted in the following certificate signed by said trustees, indorsed on the appointment, and filed therewith in the probate court:

"We, Flavius L. Brooke and Matthew Slush, executors and trustees under the will of William W. Hannan, deceased, having examined the foregoing appointment and direction executed by Luella Hannan, do hereby approve the same."

The settlement agreement already mentioned contained the following clause:

"With reference to the appointment of Luella Hannan, regarding $2,500,000 out of the residue of the estate of William W. Hannan, deceased, filed on February 18, 1919, in the probate court for the county of Wayne, in estate or file No. 70,357 aforesaid, it is hereby agreed that the fund of $2,500,000 shall be deemed to have been appropriated out of said estate to the purposes set forth in said appointment as of January 2, 1921. The aforesaid fund shall not actually be segregated and set apart at this time, but, nevertheless, shall be deemed to have been segregated as of said date, and shall be entitled from said date to its share of the net earnings of the estate in the proportion which it bears to the entire estate. The segregation and selection of the properties which shall constitute said trust fund of $2,500,000 shall be made by the unanimous action of the trustees of the estate of William W. Hannan and when they see fit. If any provisions hereof shall be deemed to be in anywise inconsistent with the terms or provisions of said appointment, the said appointment is to that extent modified and amended hereby. Inasmuch as said Luella Hannan is of the opinion that the proposed form of memorial is not the most desirable, it is agreed that nothing in this paragraph shall prevent the trustees named in the aforesaid appointment of Luella Hannan regarding $2,500,000 out of the residue of the estate of William W.

Hannan, deceased, from making further efforts to arrive in good faith at an appropriate form of memorial and from an agreement upon the same in substitution for the memorial described in said appointment, but unless so changed or modified the appointment so made shall continue in full force and effect."

Efforts to agree on a form of memorial other than that described in said appointment were thereafter made between plaintiff and said trustees, but were unsuccessful. No action has been taken in the execution or furtherance of the appointment involved, other than mere bookkeeping entries, by the trustees as contemplated by the last-quoted language of the settlement agreement. Plaintiff alleges in the eighth paragraph of her bill in this cause that at the time she signed the document purporting to exercise the power of appointment in question, "only a trifling portion of the legacies specified in said will of her husband had been paid, and at the present date only about one-quarter in amount of said legacies has been paid"; and that "said sum of $2,500,000 could not then and cannot now with safety be devoted to the purposes mentioned in said" document. In the eighth paragraph of their answer to said bill, the defendants state that they "admit the averments in paragraph 8 of plaintiff's bill of complaint," but that they do not admit that "no part of said $2,500,000 could with safety be devoted to the purposes of the trust of" said appointment. In the ninth paragraph of her said bill, plaintiff alleges that "the financial situation of the estate has always been such that no substantial part of said two and one-half million dollars could be used for such purpose." In the ninth paragraph of their said answer, the defendants deny that "no substantial part of said $2,500,000 could be used for the purpose of said appointment"; although they "admit that the circumstances have been such that it would have been unwise to so use them." I am satisfied that the following finding of fact contained in the report of the master is correct:

"At the time of the execution of said appointment and at the time of the making of said settlement agreement and of the entry of the said consent decree thereunder, and at the time of the filing of the bill herein, the payment of said sum of $2,500,000 thereunder could not, either in the judgment of the trustees under said will or in fact, have been then immediately and actually made with entire safety to the payment of the legacies and the other objects of the trust created by said will; and it was not at any of the times just mentioned, contemplated by plaintiff or by said trustees that the payment of said sum could or would be made, if ever, until some indefinite future time."

[1-3] The particular language of the will by which the validity of the instrument of appointment must be tested is the following sentence already quoted: "If my said wife shall desire, during her lifetime, to devote a portion of said property to any of the charities or charitable institutions above described, and if in the judgment of the two remaining trustees this can be done with entire safety (keeping in mind the object for which the trust is created) she shall have the right to do so." More specifically and as applied to the facts in the present case, there is presented the question as to the proper construction of the clause, "if in the judgment of the two remaining trustees this can be done with entire safety (keeping in mind the object for which the trust is created)." Clearly, the "object" of the trust just referred to is the payment of the debts and legacies of the testator, including the payment of $2,500 monthly to the plaintiff. This power, therefore, conferred on plaintiff as donee, of devoting a portion of the estate to charity if she "shall desire during her lifetime," is qualified and limited by the condition that it can be exercised only if it can be done without endangering the object of the trust just mentioned. Whether, at any particular time (aside from the question what that time shall be), it can be done "with entire safety," is a question confided to the sound judgment of these trustees. So much is plain. The dispute as to the meaning of this language relates to the precise time as of which this question of safety is to be determined. Did the testator intend that his wife should have the power, if she should "desire during her lifetime to devote a portion of said property to" any of the charities mentioned, to make such devotion only if, in the judgment of said trustees, "this (namely, the devoting of such property) can be done" *at the very time* when she should so desire without *then* endangering the object of the trust? Or, did the testator intend that his wife should have the power to irrevocably appropriate property to charity during her lifetime by merely expressing, during her lifetime, a desire that such property should be so appropriated to charity, even if such desire could not *then* be carried into effect because if it were given immediate effect it would jeopardize the object of the trust, and even if the trustees decided, *at the very time*

5 F.(2d)—46

*when it was unsafe to then carry out such desire,* that later it could be done with entire safety? These, in the final analysis, seem to me to be the ultimate questions involved in this connection. After careful thought, I reach the conclusion that the first of the questions just stated should be answered in the affirmative and the second in the negative. It would seem that unless the decision of the trustees concerning the safety of such a devotion were not confined to the question whether it would be safe for the widow to make such a donation at the time when she desired to do so, the safeguard evidently designed by the testator to protect his widow from herself would be largely, if not entirely, frustrated. Such a purpose ought not to be imputed to the testator unless it is more clearly expressed than appears here. The main object of this will is manifestly to insure ample protection to the wife of the testator during her lifetime and to provide for charity only at her death, except in the contingency, carefully safeguarded, as it was apparently designed to be, referred to in the clause now under consideration. It is an elementary principle of the law of powers that instruments creating such powers are to be strictly construed, and that, when a certain mode of executing a power is prescribed by the donor, the donee has no authority to execute such power in any other mode, and any attempt so to do is void. An examination of the will involved here makes it clear that the testator intended, and attempted to express that intention by the words employed, that the payment of the fixed monthly amounts provided for his widow should not be impaired nor jeopardized by any diversion of the trust estate to charity, even though she herself might so desire. She was permitted to designate the charitable beneficiaries to which she might desire to appoint the residue of such estate at the time of her death; and such appointment could take effect only then, that is, only by a will—with one exception. Evidently foreseeing that before her death she might desire to devote a portion of the estate to charity and that such a devotion might not in any way endanger her own interests under the will, the testator was willing to allow her that privilege, provided that her power in that respect was so modified and limited that she could exercise and effectuate it only at a time when such a donation could be made with entire safety to her. Having in mind the solicitude of the testator for his wife, so apparent throughout his will, it could not have been his intention to permit her to bind herself (even if she should be temporarily overcome or persuaded by her own generosity) by any action which in substance and effect constituted an irrevocable promise to make a donation to charity at some future time, which donation could not be presently made with entire safety to her own legacy. I am satisfied that, in view of the facts and circumstances disclosed by this record, that would be the very situation here presented if the contentions of the defendants were sustained and the so-called instrument of appointment were held valid. I conclude that even if the defendant herself were willing, she would not have the power to confirm (as she was without power to originally execute, or later, by the settlement agreement mentioned, to ratify) such instrument, which I hold to be in excess of the power created, and therefore void.

[4, 5] It is further urged by defendants that the consent decree, dismissing the former suit commenced by the same plaintiff in this court, is res adjudicata and operates as a bar to the recovery of the relief here sought. I cannot agree with this contention. A careful examination of the pleadings in the former suit, together with a consideration of the surrounding facts and circumstances, satisfies me that, in substance, essence, and effect, the cause of action involved in that suit differed from the cause of action on which the present suit is based. The bill in the first suit was brought by plaintiff in her individual capacity, for the purpose of redressing an alleged personal wrong and injury. It rested upon, and sought to enforce, the claim that plaintiff, while physically and mentally incompetent to understand her rights and the facts in relation thereto, had been, through deception and fraud, deprived of her right to take the share in her husband's estate, to which she was entitled under the Michigan statutes of descent and distribution, and had been wrongfully induced to sign what purported to be an election to waive her statutory rights and to accept in lieu thereof the provisions for her contained in the will of her husband. She sought to obtain whatever relief was necessary to recover the property to which she claimed to be entitled as an heir of her husband under the statutes mentioned. That was the gist and substance of the claim and cause of action on which that suit was based. It is true that, as a part of the general relief prayed, she asked that the court set aside the aforesaid instrument of appointment which she had executed. That reference, however, to the appointment was obviously merely in-

cidental to the allegations forming the true description and basis of the claim and cause of action involved, just stated, and prompted solely by the notion that in order to obtain the complete relief to which she was entitled it was desirable to repudiate and renounce said appointment as possibly inconsistent with her assertion of her said claim. There is nothing in the record in that suit or in the present record relative thereto which indicates that plaintiff was then claiming any right, in any capacity, or of any nature other than just stated, nor that she there alleged any wrong or sought any form or kind of relief, other than as just indicated. Moreover, that suit appears to have been considered and treated by all interested parties as involving only the elements referred to, and it was regarded and disposed of on that theory alone. The present suit is, in substance, essence, and effect, of an entirely different character. It proceeds upon quite a different theory. Considering the entire record and observing the duty of a court of equity to look through form to substance, I cannot fail to see that the issues here presented are wholly different from those inherent in the former suit. The present bill is not based upon any cause of action belonging to plaintiff as an individual, and prays no relief for her own personal benefit. It is manifestly brought by the plaintiff in her capacity as a donee of the power conferred on her in trust for the benefit of the appointees which she, as such donee, may represent. The only right which plaintiff asserts is the right to exercise the trust powers created in her by the will of the donor of such power in accordance with the provisions of such will, unhampered by the instrument, which she alleges is invalid, but which the defendants contend is valid and deprives her of the right to make such other appointments as she desires. The only wrong on the part of the defendants which she alleges is their action in interfering with her claimed right to exercise, as donee thereof, the trust power sought by her to be executed. The only form of remedial relief which she seeks is such as will enable her to so exercise such power for the benefit of the appointees thereof. I have given careful consideration to the arguments (rather technical as they seem to me to be) on this branch of the case. I cannot, however, avoid the conclusion that the rights of the plaintiff, the duties of the defendants, the breach of such rights and duties, and the remedies and relief involved in the two suits in question are so distinct and different in their essential character that a

court of equity should recognize that such suits are based upon essentially different causes of action, within the meaning of the settled rule of res adjudicata to the effect that a judgment rendered in a suit involving a certain cause of action is not res adjudicata in a subsequent suit involving a different cause of action, except as regards questions actually presented, litigated, and decided, between the same parties, in such former suit. Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; Troxell v. Delaware, Lackawanna & Western Railroad Co., 227 U. S. 434, 33 S. Ct. 274, 57 L. Ed. 586; Vicksburg v. Henson, 231 U. S. 259, 34 S. Ct. 95, 58 L. Ed. 209; Fellows v. National Can Co. (D. C.) 276 F. 309; Privett v. United States, 261 F. 351 (C. C. A. 8). The contention of the plaintiff in this respect must be sustained and that of the defendants overruled.

The conclusions thus reached are sufficient to dispose of the issues involved, and there is therefore no occasion to determine or consider any other questions discussed by the parties or by the master. A decree will be entered confirming the report of the master in accordance with the terms of this opinion, and overruling all exceptions filed to such report by the defendants in so far as they are inconsistent with the views hereinbefore expressed.