See also 128 F.Supp. 932.

**UNITED STATES of America,**
**Plaintiff,**

v.

**CONTINENTAL CAN COMPANY,**
**Inc., Defendant.**

**No. 26346.**

United States District Court
N. D. California, S. D.

Aug. 31, 1956.

788

Lyle L. Jones, Gilbert Pavlovsky, Dept. of Justice, San Francisco, Cal., for plaintiff.

Morris Doyle, Gordon Weber, San Francisco, Cal., Helmer Johnson, Allan Trumbull, New York City, for Continental Can Co., Inc.

HARRIS, District Judge.

Plaintiff, the United States of America, has moved the Court for an order construing Section II, Paragraph 12, of the final judgment entered in the above entitled cause on June 22, 1950. It is represented that Continental Can Company (herein referred to as "Can Company") is planning to merge with Hazel-Atlas Glass Company. It is unnecessary in determining this motion that the specific plan and terms of the merger be set forth. Suffice, that Hazel-Atlas Glass Company is asserted to be the third largest glass container maker in the United States producing glass containers and metal closures for packaging a broad, diversified line of products such as foods, cosmetics, beverages and many other items including glassware, tumblers, tableware and kitchenware and articles of special design for industrial use.

The Government contends that the proposed merger is in "contravention of the basic purpose of the Decree and of the antitrust laws."

Section II, Paragraph 12, of the Judgment provides:

"Defendant is hereby enjoined and restrained from acquiring by purchase or acquisition of assets or of securities or otherwise, or from leasing, from any other person, or holding, directly or indirectly, any ownership interest in, or from acquiring control over, any other person, engaged, in whole or in part, in the manufacture for sale of containers in the United States, except after an affirmative showing to this Court, upon reasonable notice to the Attorney General, that the effect of such acquisition may not be substantially to lessen competition."

The Can Company asserts that the proposed merger is not within the contemplation of this provision of the decree. Accordingly, it did not invoke the procedure outlined, in first making an affirmative showing to this Court.

It appearing that the merger contemplated was to become effective on August 8, 1956, unless restrained and enjoined, the Court ordered Can Company to show cause why a temporary restraining order and preliminary injunction should not issue enjoining and restraining the officers, directors and agents of Can Company from effectuating the plan or merger.

Can Company, in response thereto, filed a memorandum, as well as certain correspondence.[1] The matter was argued orally by the parties and submitted.

The immediate question before the Court is whether the scope of the word "containers" as used in Section II, Paragraph 12, of the decree includes *glass* containers.

The Government's contention is that "*glass* containers are substitutes for and compete with metal containers."

Can Company represents that the word "containers" as used in the Section is limited to those metal and fibre containers which were involved in the is-

1. Letter directed to Honorable Victor R. Hansen, Assistant Attorney General, dated July 18, 1956, signed "Willkie Owen Farr Gallagher & Walton"; letter directed to Thomas C. Fogarty, President Continental Can Company, dated June 27, 1956, signed "Stanley N. Barnes, Assistant Attorney General, Antitrust Division."

sues as framed by the pleadings upon which the decree rests and which, in turn, were the subject matter of the litigation.

It is conceded that the Can Company has never been engaged in the manufacture of glass containers either before, during or after the trial which gave rise to the entry of the decree.

It is manifest from the summary and analysis of the pleadings, including interrogatories, admissions, pre-trial conference matters, trial transcripts, the opinion of the Court, United States v. American Can Co., D.C.,N.D.Cal.1949, 87 F.Supp. 18, the transcript covering the hearings on the framing of the decree and hearings subsequent, that this extensive anti-trust litigation did not at any stage involve *glass* containers. It dealt exclusively with *metal* and *fibre* containers sold on long-term requirement contracts and closed with equipment leased only to the purchasers of such containers.

The word "container" was not used in its dictionary or broad, generic sense which would include every conceivable form of receptable or package. Contemporaneous construction placed thereon by the parties, and approved by the Court, in the "Betner" acquisition, makes it clear that the word "container" was not to include "bags manufactured from a variety of materials such as paper, foils, cellophane, laminates, glassine, plastics, and wax paper and classified as 'duplex', automatic bags, specialty bags and miscellaneous bags." [2]

The dictionary definition of "containers"— *"One who or anything that contains"*—clearly was not contemplated.

Is the provision of the decree in question to be amended by implication so as to cover every conceivable type of container, including glass, or is it to receive a construction consistent with the record and proceedings, and in accord with established legal principles?

■■ A judgment is limited in its application to the issues actually presented by the pleadings and intended to be adjudicated at the time of entry.[3] The pleadings and the entire proceedings make it plain that glass containers were not contemplated when the Court prepared its decree. Throughout the final judgment the word "containers" is used interchangeably with metal and fibre containers. Thus, in Section II, paragraph 1, in the several sub-paragraphs, the Court refers to metal or fibre containers, while in paragraphs 4, 5, 9 and 12 the word "containers" is used alone. Yet, the terms are clearly synonymous. Paragraph 13, which restrains acquisition of assets in the same manner as does paragraph 12, refers specifically to "container closing machines, related equipment or auxiliary equipment." It is clear that both paragraphs pertain to metal and fibre containers.

If any container which may be *"a direct substitute for metal containers,"* comes within the purview of paragraph 12, then the Court is required under such construction to read into the decree words which may embrace containers never at issue, nor within the contemplation of the parties or the Court. Such a construction does violence to elementary precepts.

■■ It may well be, as the Government contends, that "glass containers are substitutes for and compete with metal containers," and the acquisition of Hazel-Atlas by the Can Company tends to "substantially lessen competition." However, these questions can be tested by the available and appropriate proceeding contained in Section 7 of the Clayton Act, as amended, 15 U.S.C.A. § 18. The present motion for construc-

2. See stipulation and order dated November 10, 1952.

3. State of Oklahoma v. State of Texas, 272 U.S. 21, 42–43, 47 S.Ct. 9, 71 L.Ed. 145; City of Vicksburg v. Henson, 231 U.S. 259, 268–273, 34 S.Ct. 95, 58 L.Ed. 209; Hartford-Empire Co. v. United States, 323 U.S. 386, 417–418, 65 S.Ct. 373, 89 L.Ed. 322; United States v. Imperial Chemical Industries, Ltd., D.C., 105 F. Supp. 215, 222–223. Cf. Swift & Co. v. United States, 196 U.S. 375, 401, 25 S. Ct. 276, 49 L.Ed. 518.

tion of the decree may not be used as a convenient substitute.

Accordingly, it is ordered that the order to show cause and the temporary restraining order made and entered on the 7th of August, 1956, be and the same are, and each of them is, vacated and discharged.