MINNESOTA COMPANY *v.* CHAMBERLAIN.

GRAHAM & SCOTT *v.* SAME, IMPLEADED WITH LA CROSSE
RAILROAD COMPANY.

The language of a decree in chancery must be construed in reference to the
    issue which is put forward by the prayer for relief and other pleadings,
    and which these show it was meant to decide.   Hence, though the lan-
    guage of the decree be very broad and emphatic,—enough so, perhaps,
    when taken in the abstract merely, to include the decision of questions
    between codefendants,—yet where the pleadings, including the prayer
    for relief, are not framed in the way usual in equity when it is meant to
    bring the respective claims and rights of codefendants before the court,
    but are framed as in a controversy between the complainant and defend-
    ant chiefly or only—such general language will be held down to these
    two principal parties alone.

THESE were appeals from decrees of the Circuit Court for
Wisconsin, sustaining demurrers to two bills of complaint.
Both bills and the essential question in each were the same;
certain small differences between the bills being noted fur-
ther on.   The case was this:

In September, 1857, the La Crosse and Milwaukie Rail-
road Company, a company organized to build a railroad from
Milwaukie to La Crosse, across the State of Wisconsin, but
whose road was not then completed, entered into articles of
agreement with *Chamberlain,* for the double purpose of in-
suring the completion of the road and securing to him a
large debt, alleged to be due from the company.   By this
contract the road was leased to Chamberlain, in considera-
tion that he would apply the income to the working and ex-
tension of the road, to the payment of interest on debts of
the company, and to the payment of Chamberlain's own
debt, on satisfaction of which, either by application of the
income or otherwise, the road was to be restored to the com-
pany.   After the execution of this contract, and in the fol-
lowing month, the company confessed a judgment in his
favor for $629,089.72.   Afterwards, and in the same month,

*Cleveland* obtained a judgment against the company for $111,-700.71.

To enforce the satisfaction of this judgment, by sale of the road and other property of the La Crosse Company, as for brevity the corporation was usually styled, Cleveland filed his bill in the District Court of the United States for the District of Wisconsin, against that company and Chamberlain, with whom were joined some other defendants.

In this bill, according to the account given of it by the complainants in the present cases, Cleveland insisted that the lease to Chamberlain and the judgment confessed in his favor were without consideration and in fraud of creditors, and that they hindered the collection of his judgment, and he prayed that they might be declared void. The La Crosse Company and Chamberlain answered, denying all fraud, and Cleveland took issue by replication.

The court found against the respondents, and at January Term, 1859, decreed that the articles of agreement between the La Crosse Company and Chamberlain " be and hereby are *vacated, annulled,* and made *void,* so that the same shall not be of *any force and effect whatever,*" and that "the judgment and all executions and proceedings thereon be and hereby are *vacated, annulled, made void,* and *set aside,* so that the same shall have *no effect whatever.*" The decree also " perpetually enjoined and restrained" Chamberlain from " controlling or meddling with the railroad or anything belonging to it under the articles of agreement."

In 1860, a company—called for brevity the Minnesota Company—succeeded, through a purchase, and through a subsequent organization, such as is allowed by the statutes of Wisconsin, as a railroad company, in order to take and manage the property acquired by the purchase, to all the property, franchises, and rights of the La Crosse Company; subject, however, to prior incumbrances.

This Minnesota Company being thus interested in the matter, alleged by their bill below (the first of the two cases now under review), that by this decree the agreement and the

confessed judgment were made absolutely void, not only against *Cleveland,* the judgment creditor, but *also as between Chamberlain and the La Crosse Company,* and that Chamberlain, notwithstanding this decree, having purchased the Cleveland judgment, remained in possession of the road, receiving large sums of money, amounting altogether to more than $200,000, for which he was bound to account. They prayed, therefore, that Chamberlain might be ordered to apply to the payment of the Cleveland judgment, from the money so received, a sum sufficient for that purpose; that he might be ordered to account; that he might be credited with the sum applied to the Cleveland judgment; that the balance be ascertained; that the Cleveland judgment be ordered to be cancelled; and that the ascertained balance, if against Chamberlain, be paid to the Minnesota Company, or, if in his favor, by the Minnesota Company to him. They also prayed further relief.

The bill of Scott & Graham—the second of the two bills below and now here for review—was, as already signified, essentially like the first, that of the Minnesota Company. Like it, it did not seek specifically to set aside Chamberlain's lease; but while prominently making its alleged fraudulent nature inducement in this case, went on the assumption that the lease and judgment were already vacated as to everybody and for all purposes by the decree of January, 1859. The bill, however, in this second case, did allege, also, that the lease was *ultra vires,* and void, therefore, on its face; as also void, because, by its terms, hindering creditors; but its general tenor was, as already mentioned; and as in the first bill the Minnesota Company asked that the fund arising from the working of the road should be applied in satisfaction of the Cleveland judgment, for an account, &c., so the only prayer of Graham & Scott was that the same money might be applied in payment of *their* debt.

The essential question in both cases, therefore, considered by the court, was this: whether the lease made to Chamberlain, and the judgment confessed in his favor by the La Crosse Company, in 1857, was annulled as between *the*

*parties to the lease and judgment,* by the decree of the District Court of the United States for the District of Wisconsin, at the January Term, 1859, or only as against *Cleveland, the judgment creditor,* in whose suit against the company and Chamberlain the decree was rendered?

The court, it may here be said, had been informed by the counsel for the Minnesota Company and for Graham & Scott, as well as by the counsel for Chamberlain, that there was now pending in the Circuit Court of the United States for the District of Wisconsin a suit, brought by the company against Chamberlain, for the specific purpose of setting aside the contract between Chamberlain and the La Crosse Company.

*Messrs. Carpenter and Cushing, for the appellant:* The decree was not one merely postponing the lease and judgment of Chamberlain as to other creditors, but one which annulled the lease and vacated the judgment. The language of it is of that kind, in regard to which it is impossible to attempt to give it strength; as impossible as to prove an axiom; or to reason into force a seal plainly set upon a bond. No illustration can make the decree plainer; for no language can be more specific, complete, or absolute, than that of the decree itself. When a lease is "vacated, annulled, and made void, so that the same shall not hereafter *be of any force or effect whatever;*" and the lessee is "*perpetually* enjoined and restrained" from claiming or doing anything under or by virtue of the lease; can anything more be done to complete its destruction? When a judgment is "vacated, annulled, made void, set aside, so that the same shall have no further effect *whatever,*" can it be asserted that the judgment is good as between the parties to it, and remains a lien upon the debtor's property against all the world, except one? If this lease and judgment have any existence after the sweeping decree above quoted, then it is not in the power of any court to destroy either of them. By nothing, in short, but by violence upon language, can this decree be read otherwise than as it is written,—a clear, complete, abso-

lute annihilation of both lease and judgment, to all intents and purposes, and as to all persons and parties.

But three parties, it will be remembered, were before the court.

1. Cleveland, a judgment creditor.
2. The Railroad Company.
3. Chamberlain.

It is certain Chamberlain could not thereafter manage the road under his lease, for he was "*perpetually*" enjoined and restrained." The decree did not authorize Cleveland to work it, or in any way interfere with it, by appointing a receiver or otherwise. Who was to work it? Manifestly the railroad company and no one else. In the nature of things, the court must have intended that the company should resume control of the road after Chamberlain was enjoined. The court could not have intended that a great public enterprise like the one in question should be abandoned, its franchises become forfeited, and creditors, and everybody else connected with it, be ruined outright. It is impossible to say that this decree did not change the relations of Chamberlain and the company, *inter se*, as to this great property. It bound Chamberlain hand and foot, not for a time, nor for a purpose, but absolutely, perpetually, forever. It manifestly proceeded upon the ground, that the lease was an unauthorized act of the company, *ultra vires*, void as between the parties, and as between the parties and the public; and so it extirpated the lease, trampled it under foot and out of existence. It was no longer to be any protection to Chamberlain in his usurpation of great corporate franchises; no longer to protect the company in its evasion of its duty to work this road itself. And the moment the decree was enrolled, it became the right and the duty of the company to resume its abdicated franchises, and exercise them for the public benefit, according to its charter obligations to the State, and neither Chamberlain nor any one else could interfere.

It is the boast of a court of equity, that it does complete justice, and not by halves; that its decrees not only settle

rights as between plaintiff and defendants, but as between the defendants themselves. The reason given for making all persons interested in the subject-matter parties defendant is, that the court may by one decree accomplish what would otherwise require many suits, and may at once adjust the rights of all parties interested. This its decrees would not do, if they were not as binding among defendants in subsequent litigation, between themselves, as between the plaintiff and the defendants. Cases establish this quality of decrees in equity. *Farquharson* v. *Seaton\** is a strong authority to show that this decree would be conclusive in any subsequent litigation upon the subject between Chamberlain and the company. So is *Chamley* v. *Lord Dunsany*,† in Irish chancery; a case decided by Lord Redesdale, as able a chancellor as ever sat.

The counsel also argued extensively on a comparison of the charter-powers of the La Crosse Company, which were exhibited in the record, with those exercised in the lease to Chamberlain, also shown, that the lease made by the company was beyond their charter-powers, and was void as *ultra vires;* that it was void, therefore, absolutely and irrespective of intent. They argued also that independently of this, it and the judgment were, in fact, made to defraud creditors, and that both were void on that score also.

After full argument by *Messrs. Cary and Carlisle, contra—*

The CHIEF JUSTICE delivered the opinion of the court.

These two appeals present the same controlling question to be decided upon the same facts and principles. That question is, Were the lease made to Chamberlain and the judgment confessed in his favor by the La Crosse Company, annulled as between the parties to the lease and judgment by the decree of 1859, or only as against Cleveland, the judgment creditor, in whose suit against the company and Chamberlain the decree was rendered?

---

\* 5 Russel 45.                    † 2 Schoale: & Lefroy, 718.

It was the manifest intention of the Minnesota Company, in the bill filed by it, as the pleadings show, to seek a decree in this suit only upon hypothesis of the nullity of the Cleveland judgment, and the prayer for particular relief was framed accordingly. We are also informed by counsel that there is now pending in the Circuit Court of the United States for the District of Wisconsin, a suit, brought by the company against Chamberlain, for the direct object of setting aside the contract between Chamberlain and the La Crosse Company. In disposing of the cause before us, therefore, we shall not inquire whether that contract was or was not one which the La Crosse Company could legally make, nor whether the contract and the judgment were or were not in law void absolutely or as against creditors only. These matters may be better and more regularly investigated and passed upon in the cause now before the Circuit Court, and, if necessary, upon appeal from the decree in that cause. At present we shall only inquire into the effect of the decree of the District Court upon the article of agreement and the judgment which it declared to be void.

We have seen already that, according to the allegation of the Minnesota Company in their bill now before us, the issue between Cleveland, the complainant, and the La Crosse Company and Chamberlain, the respondents in the cause in which that decree was made, was upon the question whether the agreement and judgment were or were not void as against Cleveland and his judgment. The decree was evidently intended to determine that issue. It was, as evidently, not intended to determine the question whether the making of the agreement was beyond the corporate powers of the La Crosse Company, for there are no terms which affirm its inherent invalidity without regard to intent. It is our duty to construe the decree with reference to the issue it was meant to decide. Its words are very broad and very emphatic; but we cannot say that they were intended by the District Court to have any greater effect than to avoid and set aside, as against Cleveland, the agreement and the judgment impeached by his bill. We think, on the contrary, that a de-

cree having such an effect could not have been properly rendered upon the pleadings and issue in that cause. Neither the La Crosse Company nor Chamberlain sought to avoid the agreement or the judgment, nor asked any relief whatever as against each other. Indeed, the case shows that both regarded the agreement and the judgment as essential to their respective interests. We cannot ascribe to any court an intention, by a decree on such pleadings, to annul such an arrangement as between the parties to it, nor could we approve such action even were the intent clear beyond question. No question was made between Chamberlain and the La Crosse Company, nor could any question arise between them of any such nature as that between those parties and Cleveland, nor could they be required, in a suit prosecuted by Cleveland to enforce satisfaction of his judgment by setting aside their arrangement as void against creditors, to submit that arrangement, as between themselves, to the action of the court.

It is true that it is the constant practice of courts of equity to decree between codefendants upon proper proofs, and under pleadings between plaintiffs and defendants, which bring the respective claims and rights of such codefendants between themselves under judicial cognizance. In the case of *Farquharson* v. *Seton*, cited by counsel, the pleadings showed that Farquharson, as a co-defen'ant with Seton in another suit, had, by answer, set up the same case against him that he afterward set up by bill. In the former suit the decree had been against Farquharson, and he afterward sought to renew the litigation by an original proceeding, and it was held properly that the former decree, though between codefendants, was a bar. So in the case of *Chamley* v. *Lord Dunsany*, the general litigation was for the settling and marshaling of incumbrances, and it was held that where a case was made out between defendants, by evidence arising from pleadings and proofs between plaintiffs and defendants, a court of equity was entitled to make a decree between the defendants. In this case the decree was between defendants who asserted adverse interests in the incumbered estate.

But neither of these cases assert the doctrine maintained here for the appellants, that a court of equity may decree between defendants when neither pleadings nor proofs show any controversy or adverse interest between them. Nor have we been referred to any case which does assert that doctrine.

We think, therefore, that the decree of the District Court in the case of Cleveland against the La Crosse Company and Chamberlain must be regarded as having made void the arrangement between the company and Chamberlain only as against the judgment creditor, Cleveland, and not as having determined anything between those parties.

Nor do we intend here to determine anything as between them. We leave all questions concerning the validity of Chamberlain's judgment and its lien on the railroad, or touching the validity of the articles of agreement between Chamberlain and the La Crosse Company, or relating to the rights of parties in or to Chamberlain's receipts under that agreement, to be investigated and determined in the suit now pending in the Circuit Court.

Nor do we understand the decrees dismissing the bills in the two cases before us as determining anything on either of these points, but only as determining that the Cleveland decree adjudged nothing between Chamberlain and the La Crosse Company, and, therefore, cannot be regarded as evidence of the annulment of the contract between them in another suit where the validity of the contract is directly in controversy.

In the second of the cases before us, that of Graham and Scott *v.* Chamberlain and The La Crosse Company, there are averments in the bill which would require an answer if the general structure and the special prayer of the bill and the absence of a general prayer did not show that in this case, as in the case of the Minnesota Company, the real object of the suit was to establish the Cleveland decree as an absolute bar to the assertion by Chamberlain of any right whatever under his agreement and judgment. We do not think it such a bar, and therefore, without prejudice to any

suit which is now pending, or may be hereafter brought, to determine any other controversy of the La Crosse Company, or of its creditors, or of its successors in right or interest, we shall affirm the decrees of the Circuit Court in the two, cases now before us by appeal.

AFFIRMANCE ACCORDINGLY.