## GRAHAM v. HOLLISTER et al. (FULLERTON-POWELL HARDWOOD LUMBER CO., Intervener).

(District Court, W. D. Michigan, S. D. May 28, 1926.)

**1. Judgment ☞524.**

Decree is to be construed with reference to issues it is meant to decide.

**2. Judgment ☞536—Decree determining rights of different classes of creditors to share in trust estate, made at time when estate was unquestionably insolvent, held not to have determined question of interest on claims where estate later, by increase in value of assets, became solvent.**

Where decree in determining rights of different classes of creditors to share in proceeds of trust for benefit of creditors was made at time when estate was unquestionably insolvent, and estate later became solvent by reason of increase in assets during administra-

tion, *held* that question relative to whether interest was to be paid on claims was not adjudicated in such decree, and that words "paid in full," used therein, was not intended as such adjudication.

### 3. Assignments for benefit of creditors ☜171.

Rights of creditors in trust fund depend entirely on intention of debtor as expressed in instrument conveying property in trust for creditors.

### 4. Assignments for benefit of creditors ☜310 (1)—Creditors of corporation having personal indorsement of owner who conveyed property in trust for creditors had right to share equally in trust estate, although having access to personal assets in partial satisfaction of claims.

Where owner of capital stock of corporation executed trust instrument for benefit of creditors of another corporation practically owned by him, fact that one class of creditors, by reason of personal indorsement, had access to personal assets distributed in bankruptcy in partial satisfaction of claims, did not alter rights of both classes of creditors to share equally in trust estate.

### 5. Assignments for benefit of creditors ☜310 (1)—Trust instrument for benefit of creditors held to intend that all beneficiaries should share equally in trust fund until indebtedness was paid in full with interest.

Trust instrument, executed by owner of all capital stock of corporation for benefit of creditors of another corporation practically owned by him, when construed in light of circumstances, *held* to intend that all beneficiaries should share equally in trust fund until indebtedness was paid in full with interest.

### 6. Assignments for benefit of creditors ☜310 (1)—Trust instrument for benefit of creditors of corporation held to intend that creditors having personal indorsement of party creating trust should share equally with others in trust estate.

Refusal of owner of capital stock of corporation at time of executing trust instrument for benefit of creditors of another corporation to include large portion of individual assets therein, and failure to express in trust instrument any limitation on rights of creditors having his personal indorsement, *held* to show intention that such creditors having right of access to individual estate were entitled to share equally with others in dividends from trust fund.

### 7. Assignments for benefit of creditors ☜321 —Dividends paid on claim by trustee in bankruptcy against estate held in trust for creditors after he was discharged may be disbursed by trustees under trust instrument to creditors who would have been entitled thereto had fund come into trustee's hands.

Where trustee in bankruptcy had been discharged before dividends were paid on claim of bankrupt against corporation for whose creditors he had conveyed property in trust, fund may be disbursed by the trustees under the trust instrument under order of court to creditors who would have been entitled thereto had fund come into hands of trustee in bankruptcy.

### 8. Assignments for benefit of creditors ☜321 —Assets of trust executed for benefit of creditors should be converted into cash and disbursed within reasonable time, after having been in existence for 19 years in order to serve interests of beneficiaries, where assets had been converted into land contracts and accounts receivable.

Where assets of trust, executed for benefit of creditors, after being in existence for about 19 years in order to serve best interests of beneficiaries, had been converted into form of land contracts and accounts receivable, assets should be converted into cash and disbursed within reasonable time, on petition of creditors therefor.

In Equity. Suit by Robert D. Graham, trustee for William Harrison, bankrupt, against Clay Hollister and others, trustees of the stock of the Harrison Land Company, Limited. On petition for an accounting by the trustees, and for instructions, and to require them to pay additional dividends to creditors, wherein the Fullerton-Powell Hardwood Lumber Company intervened. Decree in accordance with opinion.

Butterfield, Keeney & Amberg, of Grand Rapids, Mich., for Grand Rapids Nat. Bank.

Clapperton & Owen, of Grand Rapids, Mich., for secured creditors.

Norris, McPherson, Harrington & Waer, of Grand Rapids, Mich., for defendant trustees.

Fred P. Geib, Marshall M. Uhl, and David A. Warner, all of Grand Rapids, Mich., for intervening defendants.

RAYMOND, District Judge. This matter is before the court upon petition and answers which set forth the conflicting views of two classes of creditors who are beneficiaries under a trust instrument dated February 16, 1907, by which William Harrison conveyed his entire interest in the Harrison Land Company, Limited, to certain trustees for the benefit of creditors. A general statement of the facts is necessary to a clear understanding of the present issues.

During the year 1906 the financial affairs of the Harrison Wagon Company became involved. William Harrison was at that time practically the sole owner of the capital stock of that company as well as of the capital stock of the Harrison Land Company, Limited. Pressure by creditors resulted in the execution by him on February 16, 1907, of two trust mortgages, by one of which he conveyed to certain trustees all of his stock in the wagon company, and by the other all of his stock in the land company. September 12, 1907, a petition in bankruptcy was filed

against the wagon company, resulting in an adjudication on January 17, 1908, and the affairs of the wagon company were thereafter administered by the bankruptcy court.

November 19, 1907, a petition in bankruptcy was filed against William Harrison. His death occurred March 30, 1908, and his estate was adjudged bankrupt on October 16, 1908. Robert Graham, then one of the trustees under the land company trust mortgage, was elected trustee in bankruptcy. He resigned as trustee under the mortgage, and on February 6, 1909, filed the bill of complaint in this cause against the remaining trustees for the purpose of setting aside the trust instrument. It was alleged in the bill of complaint, among other grounds, that the trust instrument was void as a preference, fraudulent conveyance, and general assignment not in compliance with state laws. Much testimony was taken and a final decree was rendered on May 31, 1912, by which the trust instrument was held valid. The result of this decree has been that the business affairs of the Harrison Land Company, Limited, have, since February 16, 1907, been administered by trustees under the terms of the trust instrument, and are still being so administered.

The bankrupt estate of the Harrison Wagon Company was finally closed on February 28, 1911, and that of William Harrison on October 9, 1914.

The difficulties of the present situation grow out of the fact that, at the time of the financial troubles hereinbefore referred to, there were three classes of creditors and three separate and distinct funds which were available for payment of some or all the different classes of creditors. The rights of the various classes of creditors in the assets of the Harrison Land Company, Limited, trust have been in dispute from the beginning, and, unless adjudicated by the decree of May 31, 1912 (a matter which is in dispute in this proceeding), the question has not been determined.

At the time of the execution of the trust instruments, the financial standings, respectively, of the Harrison Wagon Company, the Harrison Land Company, and William Harrison individually were not clear. The Harrison Wagon Company owed debts of about $445,000. It had assets sufficient for the creditors in the bankruptcy proceedings to receive dividends aggregating 59.9 per cent. A large portion of the indebtedness was in the form of promissory notes indorsed by William Harrison. About $120,000 of the

indebtedness, however, prior to the execution of the trust instrument by William Harrison, existed only as an obligation against the Harrison Wagon Company. The relative rights of these two classes of creditors became a matter of contention soon after the execution of the trust mortgage, and has continued to the present. The contentions now presented grow out of the following provisions of the trust instrument dated February 16, 1907:

"(h) To use my interest in said Harrison Land Company, Limited, and the avails thereof for the purpose of paying any indebtedness for which I am now or hereafter may be absolutely or contingently liable, and any indebtedness of the Harrison Wagon Company, of whose stock I am the owner of 34,923 shares of a total of 35,000 shares, and for most of the indebtedness whereof I am absolutely or contingently liable.

"(j) And having paid the debts aforesaid to return said stock to me."

—and the provisions of the decree of May 31, 1912, which read as follows:

"It is further ordered and decreed that creditors of the Harrison Wagon Company who have not the personal indorsement of William Harrison are equitably entitled to share in the proceeds of the trust instrument mentioned in the sixth paragraph of the bill of complaint, and that such creditors are entitled to share pro rata in the distribution of the surplus of the trust fund remaining after the payment of the amount set forth in the foregoing paragraph, and the payment of the debts of the Harrison Land Company, Limited, with the individual creditors of William Harrison; that for the purpose of such distribution said defendant trustees shall adopt and base such distribution to the various creditors of the Harrison Wagon Company and of William Harrison upon the amounts found to be due to such creditors in the allowance of their claims by the referee in bankruptcy in the matter of the estate of the Harrison Wagon Company, bankrupt, and in the matter of the estate of William Harrison, bankrupt, but no distribution shall be made by said trustee defendants until distribution shall have been made of the estate of William Harrison, bankrupt, among the creditors of the said estate; that in such distribution by the defendant trustees the creditors of William Harrison, both direct and by virtue of his indorsement, shall be entitled to receive dividends upon the amount of their claims as hereinbefore provided, without reference to the application of the dividends which they may receive in the distribution by

the trustees of William Harrison, bankrupt, until with the dividends received by them from the estate of the Harrison Wagon Company, bankrupt, from the estate of William Harrison, bankrupt, and from dividends paid by said defendant trustees, their said claims shall be paid in full."

At the time of the decree, the Harrison Wagon Company bankrupt estate had been finally closed. After applying the dividends received from that estate, there was still due creditors who had the personal indorsement of William Harrison the sum of approximately $129,000, and to creditors who did not have the personal indorsement of William Harrison the sum of approximately $49,000. Creditors having such personal indorsement proved the remainder of their respective claims against his individual bankrupt estate and received therefrom dividends of 45.2 per cent. on their claims as proved in that estate, which amounted to a dividend of 18.1252 per cent. upon their claims as originally proved against the estate of Harrison Wagon Company, bankrupt. After both classes of creditors had received their dividends from the two bankrupt estates, there remained a balance due to creditors not having the indorsement of William Harrison, the sum of approximately $49,000, and to creditors having such indorsement the sum of approximately $71,000. There was also due to individual creditors of William Harrison, on claims in no way connected with the Harrison Wagon Company, approximately $1,350.

This condition of affairs remained unchanged from 1914 to 1919, when the trustees under the trust instrument in question first paid a dividend. From 1919 to 1923, inclusive, dividends aggregating 18 per cent. on the amount of claims as proved in the two bankrupt estates were paid to creditors. In 1925 sufficient additional funds had accumulated in the trust estate to enable the trustees to pay a further dividend of 6 per cent. This was paid to that class of creditors who did not have the indorsement of William Harrison, and who had not shared in his individual estate. Creditors who had the indorsement of William Harrison and who had shared in the assets of his individual bankrupt estate had then received 59.9 per cent. from the Harrison Wagon Company estate, 18.1252 per cent. from the individual estate of William Harrison and 18 per cent. from the trust estate—a total of 96.0252 per cent. of their claims as proved in the bankrupt estate of the Harrison Wagon Company. At the same time the creditors not having the indorsement of William Harrison had received 59.9 per

cent. from the Harrison Wagon Company estate and 18 per cent. from the trust estate, a total of 77.9 per cent. of their claims as proved in the bankrupt estate of the Harrison Wagon Company. After applying the dividend of 6 per cent. paid in 1925, it will require the sum of about $22,000 to pay the claims of this class of creditors in full as originally allowed in bankruptcy. It is estimated that there will be for further distribution by the trustees a fund of approximately $50,000, after payment of taxes and other expenses of the trust.

In August, 1925, the trustees mailed checks to creditors having the personal indorsement of William Harrison for an amount sufficient to pay their claims, respectively, up to the face amount of their claims as allowed in the Harrison Wagon Company estate, and notified such creditors that, unless the court ordered the payment of interest on their claims, no further payments would be made upon such claims. Thereafter the petition now before the court was filed, praying that defendant trustees be required to pay additional dividends to petitioner and other creditors similarly situated. The petition also prays for an accounting by the trustees and for instructions that they sell the remaining property and distribute the proceeds. The trustees, in answer to said petition, admit the facts to be substantially as alleged in said petition, state that they are in doubt as to whether the creditors of the wagon company are entitled to be paid interest upon their claims, and ask for an order instructing and directing them in that respect. They also ask for an order instructing and directing them as to the distribution of the sum of $6,985.18 now in their hands, representing the difference between the amount paid about August 1, 1925, to creditors having indorsement of William Harrison, and the amount which would be equivalent to a 6 per cent. dividend on such claims, and also as to whether or not the trustee shall pay dividends upon a claim filed by Robert D. Graham as trustee of William Harrison against the estate of Harrison Wagon Company, bankrupt, in the sum of $10,350.94, and, if so, to whom the same shall be payable. They also ask for instructions with reference to the payment of further fees to attorneys for intervening defendants.

The creditors who did not have the indorsement of William Harrison have intervened in this proceeding and pray that an order be made directing the trustees to continue to pay dividends only to those creditors of the Harrison Wagon Company who do not have the indorsement of William Harrison,

and any individual creditor of William Harrison other than a creditor of the Harrison Wagon Company, until all such creditors shall have received 100 per cent. upon their claims as originally allowed; that said trustees be further directed, after payment of all of said claims in full as originally allowed, to disburse any remaining funds pro rata among all of said creditors to apply upon interest upon their claims after the date of the filing of the petition in bankruptcy in the estate of the Harrison Wagon Company, bankrupt.

The creditors having the indorsement of William Harrison contend that they are entitled to receive additional payments out of the trust fund on a pro rata basis with the other creditors until they have received the principal and interest of their original debts in full to the date of final payment or until the trust fund is exhausted. It is their claim that the notes given by the Harrison Wagon Company bore interest at 6 per cent. per annum, and that, under the rule of the equity courts of the United States and of Michigan, as distinguished from the rule in bankruptcy, secured creditors are entitled to continue to receive dividends from the trust fund upon the face amount of their claims until such claims have been paid in full with interest to the date of payment, notwithstanding the fact that such creditors have received dividends from other sources to which the unsecured creditors have not had access.

The creditors not having the indorsement of William Harrison insist that they are entitled to receive out of the trust funds 100 per cent. of their claims as proven against the Harrison Wagon Company before any interest can be paid from the trust fund upon the claims of creditors having the indorsement of William Harrison; that, after all claims in the bankrupt estates have been paid in full, interest must then be paid out of any surplus in the trust fund until all creditors are paid in full with interest to date of final payment or until the trust fund is exhausted. It is their claim that by the terms of the trust instrument both classes of creditors were intended by William Harrison to be placed in equally favorable positions, and that under the terms of the decree hereinbefore referred to the claims of all creditors against the trust fund became claims in rem, and that by that decree the amount found to be due in bankruptcy to the various creditors was fixed absolutely as the amount of the claims entitled to share in the trust fund.

The claims of the various parties, amplified by elaborate briefs, have been given careful consideration. Both classes of creditors rely largely upon the construction of the decree of May 31, 1912, to support their respective positions. The words "paid in full," as used in that decree, are given different interpretations. An examination of the record upon which that decree is based, as well as the two elaborate opinions which preceded the filing of that decree, convinces the court that no issues similar to those here presented were then presented to the court for determination. Nothing can be more clear than that the present situation was not then contemplated.

The most reliable estimates as to values which were then placed before the court lead to the inevitable conclusion that at the date of the decree the three estates concerned were hopelessly insolvent. It is stated by counsel that it was determined by the former decree that Mr. Harrison was not insolvent when he executed the trust in 1907. The opinion filed August 27, 1910, does not support this statement. The question of insolvency was discussed but not determined, and the validity of the trust conveyance was finally based upon estoppel. At the time of the decree, the Harrison Wagon Company bankrupt estate had been finally closed and there were still unpaid obligations of about $178,000. The administration of the individual estate of William Harrison at that time had progressed so far as to make it apparent that, after all available assets in that estate were distributed, there would still be required at least $120,000 to pay the claims in full as proved in the bankrupt estates. Estimates of the amount that would be realized from the trust estate of the Harrison Land Company, Limited, were from $60,000 to $90,000. It seems certain that, had it occurred to any of the interested parties at that time that the trust fund might yield sufficient assets to pay the claims of all creditors in full as allowed against the bankrupt estates, and that a balance would remain to apply on interest on such claims, the rights of all parties thereto would have been then definitely submitted to the court and clearly adjudicated, and there would now be no dispute as to the proper construction of the decree.

It is clear from the testimony, the two opinions, and the decree that it was not then contemplated that liquidation would continue through a period of 19 years. The unusual situation is here presented of an estate which was unquestionably insolvent at the time of the decree in question, which has now apparently become solvent by reason of increase in value of assets during the period of adminis-

tration. It is now solvent only if the claims against the estate be regarded as established at the amounts at which they were allowed from 15 to 18 years ago against the bankrupt estates and without the addition of interest. If interest is added, then the estate is still insolvent.

[1] It is therefore evident that to construe the words "paid in full" in the decree as conclusive of the question now before the court would be to lose sight of the issues then involved. A decree is to be construed with reference to the issues it was meant to decide. In the case of City of Vicksburg v. Henson, 231 U. S. 259, 273, 34 S. Ct. 95, 100 (58 L. Ed. 209), Mr. Justice Day used the following language:

"The nature and extent of the former decree is not to be determined by seizing upon isolated parts of it or passages in the opinion considering the rights of the parties, but upon an examination of the issues made and intended to be submitted and what the decree was really designed to accomplish. We cannot agree with the court below or with the majority of the Circuit Court of Appeals that the effect of the former adjudication was to preclude the rights of the parties in the present controversy."

See, also, Haskell v. Kansas Natural Gas Co., 224 U. S. 217, 223, 32 S. Ct. 442, 56 L. Ed. 738, Graham v. Railroad Co., 3 Wall. 704, 710, 18 L. Ed. 247, and Barnes v. Chicago, M. & St. P. Ry. Co., 122 U. S. 1, 7 S. Ct. 1043, 30 L. Ed. 1128.

The issues determined by the decree were the validity of the trust instrument of February 16, 1907; the validity of the claim of the bankrupt estate of William Harrison against Harrison Land Company, Limited; the right of creditors of the wagon company not having Harrison's indorsement to participate in the trust fund equally with creditors having such security; and the right of such creditors to share in the proceeds of the collection of the claim of the bankrupt estate of William Harrison against the Harrison Land Company, Limited.

[2] There is nothing in the opinions nor in the decree to indicate that the words "paid in full" were used with the thought of deciding the important issues now presented to the court. It may be said of these words, as was said of the word "income" in the case of Towne v. Eisner, 245 U. S. 418, 425, 38 S. Ct. 158, 159 (62 L. Ed. 372, L. R. A. 1918D, 254):

"A word is not a crystal, transparent and unchanged, it is the skin of a living thought, and may very greatly in color and content

according to the circumstances and the time in which it is used."

It must therefore be held that the questions here presented are not within the issues heretofore adjudicated.

Nor is it true that the former decree, by reason of the direction therein contained that the trustees should base distribution of the trust fund upon the amounts found to be due to creditors in the allowance of their claims by the referee in bankruptcy, fixed absolutely the amount of the claims entitled to share therein, adopted the bankruptcy rule as to payments to creditors holding collateral security, or converted the claim of the beneficiaries of the trust estate from claims in personam into claims in rem. The decree evidently referred to the allowance of these claims in bankruptcy solely for the purpose of establishing the proportionate rights of the parties, the basis for distribution, and to avoid the inconvenience and expense incident to a reference to the master. To reach a contrary conclusion would be to hold that the decree determined vitally important issues concerning which the pleadings and two exhaustive opinions which were filed are silent.

The issues of importance which were determined by the former decree were that the trust instrument is legally effective, and that the creditors of Harrison Wagon Company not having the indorsement of William Harrison are entitled to share equally with the other beneficiaries in the trust property. The necessary result of the decree was that the assets of the Harrison Land Company, Limited, continued to be administered as a trust estate, and the trustee in bankruptcy was excluded from the right to administer these assets under the bankruptcy laws.

[3] It follows that the issues here presented must be determined by construction of the trust instrument in accordance with the principles of equity. The rights of creditors in the trust fund, so far as involved in the present issues, depend entirely upon the intention of William Harrison as expressed in the trust instrument.

It is suggested that it was the intent of William Harrison to place all his creditors, both secured and unsecured by his indorsement, upon a plane of equality. This may well be doubted in view of the testimony of the most active trustees bearing upon the proper construction of the instrument, and the statements to creditors in circulars distributed soon after the execution of the trust instrument. In any event, it is clear that, if such were his intent, the legal effect of what he actually did was to give it effect only so

far as he included his individual property within the terms of the trust.

[4] If it were his intention to make all creditors equal in the distribution of his estate, that intent cannot supplant the indisputable fact that he expressly declined to include a very substantial portion of his individual assets within the trust. This excluded from the trust estate several descriptions of real estate, stock in two Grand Rapids banks, and one business corporation, and claims against the land company and wagon company, which claims amounted to in excess of $60,000. See opinions of August 27, 1910, and August 2, 1911. These assets were duly administered in the bankruptcy court, and the fact that one class of creditors by reason of indorsements had access to these assets in partial satisfaction of claims cannot alter the rights of both classes of creditors to share equally in the trust estate.

[5, 6] The trust instrument discloses no intention upon the part of William Harrison that his creditors shall be deprived of interest on their claims. At the time of the creation of the trust estate, a large proportion of the indebtedness secured by the trust mortgage was in the form of promissory notes which were clearly interest-bearing obligations, and nothing appears which indicates a purpose to avoid this legal obligation. Nor is there any indication of an intent that any funds should be returned to William Harrison or his estate until after all creditors are paid in full with interest. It appears to the court that the obvious intent of the trust instrument as therein expressed and construed in the light of the circumstances under which it was made is that all beneficiaries should share equally in the trust fund, and that they should continue to so share until all indebtedness is paid in full with interest. The refusal of Mr. Harrison to include a large portion of his individual assets in the trust estate and his failure to express in the trust instrument any limitation upon the rights of such beneficiaries must be accepted as conclusive of his intention that beneficiaries under the trust who also had right of access to his individual estate are entitled to dividends from the trust without reference to dividends received from the individual estate.

This construction accords not only with the apparent purpose of the trust instrument, but is in harmony with the equity rule which is well established in both the federal and state courts. See Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Chemical National Bank v. Armstrong, 59 F. 372, 8 C. C. A. 155, 28 L. R. A. 231; Commercial & Savings Bank v. Jenks Lbr. Co. (C. C.) 194 F. 732; In re E. Bement's Sons, 150 Mich. 530, 114 N. W. 327. See, also, Board of County Commissioners v. Hurley, 169 F. 92, 94 C. C. A. 362.

[7] The trustees are holding in their hands the sum of $2,484.20 which would be due as dividends from said trustees upon a claim of Robert D. Graham, trustee of William Harrison, bankrupt, which appears in the final dividend list of Harrison Wagon Company, bankrupt, in the sum of $10,350.94. The trustees ask for instructions as to whether or not they shall pay dividends upon said claim, and, if they shall be ordered to pay said dividends, then to whom the same shall be payable. It is apparent that these funds, which are the result of the payment of dividends on a claim of William Harrison against the Harrison Wagon Company out of the proceeds of the property of the Harrison Land Company, Limited, in fact belong to the estate of William Harrison, bankrupt. This estate has been long since closed and the trustee discharged. Both the trust instrument and the decree indicate clearly that claims against the Harrison Wagon Company without exception are to be paid from the trust estate. No reason appears why the present trustees may not properly disburse the fund under the order of this court to those creditors who would have been entitled thereto had the fund come into the hands of the trustee in bankruptcy.

[8] This trust has been in existence for about 19 years. Complaint is made of the delay incident to the termination of the trust. In view of the fact that no creditor has previously seen fit to apply to the court for an order directing distribution, no creditor has the right to seriously complain of the delay. It is evident all beneficiaries of the trust, as well as the trustees, were of the opinion that the best interests of the beneficiaries were being served by the continuance of the trust. However the report of trustees submitted since the filing of the petition herein indicates that, with the exception of real estate of the value of about $400, all of the assets have been converted into the form of land contracts and accounts receivable. Some of these land contracts extend over a period of several years in the future. These assets should be converted into cash and disbursed within a reasonable period of time which ought not to exceed 6 months.

The decree may declare:

(1) That the trustees shall forthwith pay a dividend of 6 per cent. to petitioners and creditors similarly situated, less the amount

previously paid to such creditors, respectively, to apply thereon.

(2) That the trustees shall include petitioner and creditors similarly situated in the distribution of all subsequent dividends, and on the same basis as that adopted for the distribution of dividends prior to 1925.

(3) That the fund now held by the trustees as dividends upon the claim of Robert D. Graham, trustee, against the estate of Harrison Wagon Company, bankrupt, shall be forthwith paid to the creditors of William Harrison, bankrupt, and that such further dividends as shall accrue thereon shall be paid to such creditors.

(4) That the trustees shall proceed forthwith to convert all assets of the trust into cash, and to make disbursement of same in accordance with the directions of the court, and to make final report and account thereof to this court within a reasonable period of time after date of decree herein, said period of time not to exceed 6 months.

(5) That the compensation of trustees be fixed at the hearing on the final report and account.